**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frederick GRAEWE, Defendant-Appellant.**

**No. 82–3459.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 19, 1982.

Decided Sept. 2, 1982.

F.2d 820, 824–25 (3d Cir. 1980).

Edward F. Marek, Donald N. Krosin, Cleveland, Ohio, for defendant-appellant.

J. William Petro, Steven R. Olah, Donna M. Congeni. (Lead Counsel), Dept. of Justice, Cleveland, Ohio, Gregory B. English, Justice Dept. Narcotic and Dangerous Drug Section, Washington, D. C., for plaintiff-appellee.

Before LIVELY, KENNEDY and MARTIN, Circuit Judges.

PER CURIAM.

Defendant Graewe appeals a decision of the District Court granting the government's motion to deny him pre-trial bail. Graewe and others are charged in Count I of a seventy-four count indictment with a series of violent criminal acts. These acts include murder and threats to murder po-

tential government witnesses and special agents of the FBI. The acts and the conspiracy to commit them are alleged to have facilitated the operation of a narcotics trafficking and gambling enterprise in violation of 18 U.S.C. §§ 1510, 1961, 1962(d). The indictment further charged that defendant Graewe was responsible for the internal and external security of the criminal enterprise. His duties are alleged to include the intimidation of prospective witnesses, maintaining internal discipline within the organization through fear and violence as well as murdering competing drug dealers and suspected police informants.

Graewe was arraigned on July 3, 1982, where he entered a plea of "not guilty." The government moved the District Court to deny Graewe bail or, in the alternative, to set bail at fifty million dollars in cash. The District Court was asked to exercise its extra-statutory powers to protect the integrity of the proceedings and hold Graewe without bail to prevent him from unlawfully interfering with the instant criminal prosecution by threatening to murder and murdering prospective witnesses. An affidavit by special agent Winslow, which accompanied the motion, outlined the evidence against the defendants as a group.

At the District Court hearing on the government's motion special agent Winslow was the only witness.[1] He testified on direct and cross-examination that the defendants named in Count I committed the alleged acts of violence enumerated in that count and supplemented his affidavit with testimony relating to the alleged danger to potential witnesses. Although no evidence was presented at the hearing that defendant Graewe had ever specifically threatened a potential witness or government agent, Winslow did testify that defendant had admitted to one of the witnesses in the case his participation in the removal of the body of Ritson, a man murdered in 1978. There was evidence that shortly after Ritson merged his narcotics operation with that of

---

1. In *United States v. Wind,* 527 F.2d 672, 672 (6th Cir. 1975), citing 18 U.S.C. § 3146(f), this Court held that evidence introduced at a pre- trial bail hearing need not conform with the rule pertaining to the admissibility of evidence in a court of law.

the co-conspirators he was arrested for a narcotics violation himself. Other co-conspirators told other government witnesses that it was believed that Ritson was or was going to be a source of information for law enforcement officers, and also that he knew about one of the earlier murders and that as a result, to keep him from testifying, he was also murdered. Special agent Winslow also testified that defendant admitted participation in the June 1980 killing of one Bostic to Newman, a witness in the witness protection program. There was testimony that in addition to owing a gambling debt, Bostic was suspected of being a law enforcement informant and that this later circumstance was discussed, allegedly by co-conspirators and given as the reason for his murder. Winslow related that there was also an admission to one of the witnesses by a co-conspirator that Bostic's body was to be found to show everyone else that the co-conspirators meant business. A search of defendant's residence in June 1981 uncovered a ring and watch worn by Bostic on the day he disappeared. A search also revealed weapons.

At the close of the hearing the District Court summarily denied defendant's bail. On July 15, 1982, the lower court entered its written memorandum on its denial of bail. The court addressed the propriety of denying bail based on its extra-statutory powers to protect the integrity of its own proceedings, and accepted the evidence presented by special agent Winslow that prospective witnesses in this case had been intimidated and threatened as had Winslow, his partner and their families. It stated that it denied bail based on this evidence. The court's memorandum went on to state that drug trafficking was a sufficient danger to the community to justify the denial of bail.

Defendant has appealed pursuant to Fed. R. App. P. 9(a) on the ground that, if the denial of bail prior to trial is constitutional, there was insufficient evidence for the District Court to find that it was necessary to confine him for the protection of future witnesses. He also asserts that the District Court applied the improper "danger to the community" standard in denying bail.

As a threshold matter we do not consider that the District Court's reference to drug trafficking as a danger to the community necessarily means that it applied that standard. The court in a prior statement had accepted the testimony of Winslow that prospective witnesses in this case, as well as the FBI agents and their families, have been intimidated and threatened. The District Court specifically stated that "[p]remised upon this evidence this court holds that if any of the defendants were released on bail pending trial they would pose an unreasonable risk of danger to other persons. . . ." The court's additional comment regarding the "community at large"[2] is gratuitous or an alternative holding and does not destroy the significance of his reliance on the threats against potential witnesses. We thus address the sufficiency of the evidence as to whether court processes would be rendered ineffective if defendant were permitted release on bail.

█ It is well established that a trial court has the inherent power to revoke a defendant's bail during trial if necessary to ensure orderly trial processes. *Bitter v. United States,* 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1967). *Accord, Mastrian v. Hedman,* 326 F.2d 708 (8th Cir.), *cert. denied,* 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); *Fernandez v. United States,* 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (Harlan,

---

**2.** In *United States v. Wind,* 527 F.2d 672 (6th Cir. 1975), cited by the District Court in its opinion, this Court held that a judicial officer may consider evidence that the defendant has threatened witnesses and is a danger to the community in determining whether a defendant should be released on pre-trial bail. Subsequently, this Court removed the possibility that *Wind* could be construed as authorizing the use of the court's extra-statutory powers when a defendant is alleged to merely pose a threat to the community. *United States v. Beaman,* 631 F.2d 85, 87 (6th Cir. 1980). A fair reading of *Wind,* however, is that this Court was qualifying the types of threats that could realistically pose a danger to the court's processes. *Wind* may be read as stating that a threat alone may be insufficient absent additional facts that suggest that the particular threat poses an unreasonable risk of danger to court processes.

Circuit J.); *Carbo v. United States,* 288 F.2d 282, 286 (9th Cir. 1961); *United States v. Gilbert,* 425 F.2d 490, 491 (D.C. Cir. 1969); *United States ex rel. Fink v. Heyd,* 287 F.Supp. 716 (E.D. La. 1968), *aff'd,* 408 F.2d 7 (5th Cir. 1969); *United States v. Cozzetti,* 441 F.2d 344, 350–51 (9th Cir. 1971); *United States v. Kirk,* 534 F.2d 1262, 1280–81 (8th Cir. 1976) (bond revoked during "proceedings" on ground defendants killed witnesses). *See United States v. Wind,* 527 F.2d 672, 674–75 (6th Cir. 1975) (pre-trial revocation of bail); *United States v. Bigelow,* 544 F.2d 904 (6th Cir. 1976); *Bloss v. Michigan,* 421 F.2d 903, 905 (6th Cir. 1970) (post-trial revocation of bail pending appeal); *Wheeler v. United States,* 640 F.2d 1116, 1123 (9th Cir. 1981) (post-trial protective order). Interference with government witnesses by a defendant is a sufficient basis for the exercise of the trial court's power to revoke bail *during* trial. *Cozzetti, supra,* 351; *Kirk, supra,* 1280–81; *Gilbert, supra,* 491–92.

In *Carbo v. United States,* 82 S.Ct. 662, 7 L.Ed.2d 769 (1962), Circuit Justice Douglas acknowledged that this inherent power may even extend to custody *in advance* of trial when the court's own processes are jeopardized by threats against a government witness. He stated that this inherent power should be exercised, however, only in an "extreme or unusual case. *Id.* 82 S.Ct. 668. Subsequently, in *Wind,* the Court held that "courts have the inherent power to confine the defendant in order to protect future witnesses at the pre-trial stage as well as during trial." *Wind, supra,* 675. This proposition was reaffirmed in *Bigelow, supra. See United States v. Andrews,* 633 F. 449, 463 (6th Cir. 1980) (Engel, J., dissenting). In *Wind* the order denying bail was vacated because bail had been denied, in part, on the basis of an *in camera* proceeding; in *Bigelow* it was vacated because defendant had not threatened any witnesses or taken any steps or made any threats that would hazard an orderly trial on the date scheduled. In *United States v. Smith,* 444 F.2d 61 (8th Cir. 1971), the Eighth Circuit affirmed the district court's denial of pre-trial bail without discussion of the facts which would have justified the court's exercise of its inherent powers.

Competing principles are at stake whenever the possibility of the denial of bail is raised. The right to bail is recognized in the eighth amendment and in the Bail Reform Act of 1966, 18 U.S.C. § 3146. A person arrested for a non-capital offense shall be admitted to bail. *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). The traditional right to freedom before conviction permits the unhampered preparation of a defense, serves to prevent the infliction of punishment prior to conviction and preserves the presumption of innocence. *See Hudson v. Parker,* 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895). On the other hand, a trial court has an interest in protecting the administration of justice from "abuses, oppression and injustice." *Bitter, supra,* 16; *Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569 (1962); *Gumbel v. Pitkin,* 124 U.S. 131, 144, 8 S.Ct. 379, 383, 31 L.Ed. 374 (1888). The court's interest in efficient criminal prosecution and the gathering of witnesses demands precautions to ensure that the proceedings move expeditiously and in accordance with due process. The extension of inherent powers to deny bail during trial to the pre-trial period recognizes that unless the witnesses are protected before trial they and their testimony will not be available at trial. It also recognizes that the court's interests in the integrity of its own processes and the fair administration of justice are not confined to trial but to all proceedings. By protecting witnesses before trial through a defendant's detention, the court is encouraging those witnesses and other potential witnesses to come forward and provide information helpful to the implementation of justice.

■ The government, through Winslow, admitted that there is no evidence that defendant personally made oral threats to any of the potential witnesses. The absence of personally made oral threats does not preclude the trial court's finding that defendant should be denied pre-trial bail. Conduct on the part of an individual may constitute as much of a threat as oral repre-

sentations. There was testimony that defendant personally participated in the murders of Ritson and Bostic, two individuals who were killed partly because of knowledge or suspicions that they were law enforcement informants. Individuals who know of defendant's personal course of conduct toward witnesses or government informants when juxtaposed with comments of co-conspirators as to the reason for those murders may be expected to construe this course of conduct as much of a threat to their lives should they wish to testify or provide information as an oral threat. The nature of the conduct which acts as a substitute for the oral threat is also relevant. In this case defendant was tied to retaliatory murders. This particular type of conduct is especially threatening and likely to deter the testimony of witnesses because of its finality and gruesome nature.

The fact that the threatening conduct engaged in by defendant personally occurred in 1978 and 1980 does not preclude the District Court's conclusion that defendant is presently a threat to others. Nothing has occurred to dissipate the chilling effect of past conduct. Potential witnesses in this proceeding would be reasonable in their belief that retaliation by defendant would be forthcoming for individuals who wished to testify or provide information. Potential witnesses would be aware that defendant is still involved with the same individuals with whom he was associated at the time of his participation in the murder of Bostic and Ritson. These associates and co-conspirators were linked to additional retaliatory murders in which bodies disappeared or were mutilated. Two associates, Zagaria and Hartmut Graewe, have continued to make oral threats, the last subsequent to the indictment.[3] Defendant's past participation in retaliatory murders and continued association with individuals who engaged in similar conduct and who also have issued recent oral threats indicates the ongoing nature of defendant's threatening conduct.

The importance of the defendant's liberty interest requires that there be substantial evidence of the necessity of denying him pre-trial bail to protect future witnesses in this proceeding. Here two separate witnesses supplied Winslow with information regarding defendant's involvement in the murders of Bostic and Ritson. In addition, Bostic's ring and watch were found in defendant's residence. The District Court's decision to exercise its inherent powers to confine defendant to protect future witnesses in this proceeding is supported by substantial evidence. The decision of the District Court granting the government's motion to deny defendant pre-trial bail is affirmed.

**3.** Winslow testified that one of defendant's co-conspirators, Zagaria, told Newman that he would do anything to stop the investigation. Zagaria told Newman that he was ordering five car bombs to kill five persons including government informants, one Cleveland Police informant and two special case agents. Other potential witnesses had advised Newman that Zagaria made statements that he will do anything in his power to locate the protected witnesses in the marshal's custody and kill them before they can testify. Newman also testified that approximately twenty witnesses have refused to testify or provide information because they feel that because of their knowledge of the co-defendants in this case, they fear for their lives. He testified further than an attorney representing one of the unindicted co-conspirators was threatened by Zagaria. The unindicted co-conspirator informed his attorney that Zagaria told him that he should get another attorney, one that could be trusted to keep information silent and that if he did not, the attorney would be removed or killed. Winslow testified regarding information received regarding the death and mutilation of Keith, who had threatened to go to law enforcement officials with information; Conley, a competitor of Zagaria's who disappeared; Giaimo, who disappeared after failing to pay for drugs from Zagaria; Perrier, who was shot in the head five times and Waite, a suspected police informant who disappeared. When Waite's residence was searched, law enforcement officials found a pool of blood and portions of skin.