UNITED STATES of America, Appellee,

v.

Paul John LEISURE, a/k/a John Paul Leisure, Anthony J. Leisure, David R. Leisure, John F. Ramo, Ronald Joseph Broderick, Charles M. Loewe and Steven Wougamon, Appellants.

No. 83-1594.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1983.

Decided May 17, 1983.

On Motion For Clarification June 10, 1983.

As Modified on Denial of Rehearing and Rehearing En Banc June 17, 1983.

Dissent From Denial of Rehearing En Banc Aug. 1, 1983.

Irl Baris, St. Louis, Mo., for appellants.

Frederick Buckles, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL,* Senior District Judge.

McMILLIAN, Circuit Judge.

Appellants Paul John Leisure, Anthony J. Leisure, David R. Leisure, John F. Ramo, Ronald Joseph Broderick, Charles M. Loewe, and Steven T. Wougamon appeal from an order entered in the District Court[1] for the Eastern District of Missouri denying their joint motion for reduction of bail. Appellants and Robert M. Carbaugh[2] were charged in an indictment filed on April 13, 1983, with participating in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (Count I), conspiracy to conduct racketeering activity in violation of 18 U.S.C. § 1962(d) (Count II), obstruction of justice in violation of 18 U.S.C. § 1510 (Counts III and IV), and making and possessing a destructive device in violation of 26 U.S.C. §§ 5861(f), 5871 (Counts V and VI).[3] The maximum penalties for the offenses charged are substantial: Counts I and II (racketeering), twenty years imprisonment and $25,000 fine; Counts III and IV (obstruction of justice), five years imprisonment and $5,000 fine; and Counts V and VI (destructive device), ten years imprisonment and $10,000 fine.

Following appellants' arrests on warrants issued pursuant to the indictment and their appearance before a magistrate, the district court set bail for each appellant in the following amounts:

| | |
|---|---|
| Paul John Leisure | $2,000,000 cash |
| Anthony J. Leisure | $2,000,000 cash |
| David R. Leisure | $2,000,000 cash |
| John F. Ramo | $1,000,000 cash |
| Ronald Joseph Broderick | $1,000,000 cash |
| Charles M. Loewe | $1,000,000 cash |
| Steven T. Wougamon | $1,000,000 cash |

Appellants at that time were remanded to the custody of the United States Marshal and have been confined in the City Jail in Cape Girardeau, Missouri.

On April 18, 1983, appellants were arraigned before the magistrate[4] and entered

---

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

2. Robert M. Carbaugh is not a party in this appeal. Although arrested in California some time ago, Carbaugh was just arraigned before the district court on May 9, 1983.

3. Paul John Leisure is charged in Counts I, II, III, and V; Anthony J. Leisure is charged in Counts I, II, III, V, and VI; David R. Leisure is charged in Counts I, II, III and VI; John F. Ramo is charged in Counts I, II, III, V, and VI; Ronald Joseph Broderick is charged in Counts I, II, and VI; Charles M. Loewe is charged in Count I and II; Steven T. Wougamon is charged in Counts I, II, III, and IV. Robert M. Carbaugh is charged in Counts I, II, and III.

4. The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri.

pleas of not guilty. Appellants also filed a joint motion to reduce bail. Immediately after arraignment the magistrate held a hearing on the motion to reduce bail. One of the investigating law enforcement officers testified on direct and cross-examination. Appellants were present and represented by counsel. Appellants were given an opportunity to present evidence but did not testify. In addition, reports prepared by the United States Probation Office containing background information about appellants were presented to the magistrate for consideration. The government opposed the motion for reduction of bail, citing the nature and circumstances of the offenses charged, the weight of the government's evidence, and the murder of an individual who appellants allegedly suspected might have become an informant and government witness against them.[5]

The magistrate denied the motion for reduction of bail on April 20, 1983. *United States v. Leisure,* No. 83–81–Cr(C) (E.D.Mo. Apr. 20, 1983). Appellants then filed a motion in district court to amend the order denying reduction of bail. The district court denied the motion to amend and affirmed the order denying reduction of bail on April 29, 1983. Appellants filed a notice of appeal pursuant to 18 U.S.C. § 3147(b) and Fed.R.App.P. 9(a) and a motion to expedite the appeal on May 4, 1983. Oral argument was heard on May 9, 1983. For reversal appellants argue that any allegations that appellants pose a serious danger to government witnesses are not relevant under 18 U.S.C.A. § 3146(a) (West Supp. 1982); if such allegations are relevant, the evidence of danger was insufficient; and setting bail in the amount of $1 million cash and $2 million cash is excessive and violates the eighth amendment of the Constitution. Appellants also argue that because they are presently confined in Cape Girardeau, some distance from St. Louis, which is the location of the offenses charged and of appellants' counsel, appellants are unable to assist their counsel in the investigation and preparation of their defense. For the reasons discussed below, we grant the motion to expedite the appeal, reverse the order of the district court denying appellants' motion to reduce bail and order appellants released pending trial upon satisfaction in full of the conditions set forth below.

As stated in *Stack v. Boyle,* 342 U.S. 1, 4–5, 72 S.Ct. 1, 3–4, 96 L.Ed. 3 (1951) (emphasis in original, citations omitted),

> federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

> The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as an additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment.

*See* 18 U.S.C.A. § 3146(a) (West Supp.1982) (amended by the Victim and Witness Protection Act of 1982, § 8, Pub.L. No. 97–291, 96 Stat. 1248, 1257 (1982) (codified at 18 U.S.C.A. § 3146(a) (West Supp.1982));[6]

---

**5.** The indictment was the result of a joint federal and state investigation into several car bombings in the St. Louis area. The incidents and the investigation received widespread media coverage. The indictment charged appellants with conspiracy and conducting an enterprise through a pattern of racketeering which included attempted murders, three murders, one allegedly in retaliation for the attempted murder of one of the appellants and another of a potential government witness, and obstruction of justice.

**6.** 18 U.S.C.A. § 3146(a) (West Supp.1982) provides:

(a) Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial offi-

Fed.R.Crim.P. 46(a). "The test for excessiveness is not whether [the] defendant is financially capable of posting bond but whether the amount of bail is reasonably calculated to assure the defendant's appearance at trial." *United States v. Beaman,* 631 F.2d 85, 86 (6th Cir.1980), *citing United States v. Wright,* 483 F.2d 1068, 1070 (4th Cir.1973). In particular, the amount of bail should not be used as an indirect, but effective, method of ensuring continued custody. As noted in *United States v. Leathers,* 134 U.S.App.D.C. 38, 412 F.2d 169, 171 (1969) (per curiam),

> the setting of bond unreachable because of its amount would be tantamount to setting no conditions at all. Conditions which are impossible to meet are not to be permitted to serve as devices to thwart the plain purposes of the [Bail Reform] Act, nor are they to serve as a thinly veiled cloak for preventive detention.

Here, the magistrate set the amount of bail at $1 million cash and $2 million cash. The magistrate stated:

> The Court believes that were the defendants released, there is substantial likelihood that retribution would be attempted

against witnesses against them. The pendency of capital offenses in the Missouri state court is another factor creating a substantial incentive on the part of the defendants to flee.

It is the opinion of the [court] that, with regard to all above-named defendants, there exists an extreme likelihood of flight.

We conclude the district court abused its discretion in refusing to reduce the appellants' bail. All of the evidence adduced before the magistrate indicated that appellants would appear at their trial. We do not think the very substantial cash bonds represent a reasonable calculation of the conditions necessary to assure the appellants' appearance at trial.[7]

■ The evidence presented at the hearing before the magistrate shows that appellants have either lived in St. Louis all their lives or for many years; their immediate families live in St. Louis; each appellant, with the exception of Steven T. Wougamon, owns real property in St. Louis; each appellant is employed or is self-employed in St. Louis; each appellant either has not been on bond or has appeared in court when

---

cer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, subject to the condition that such person not commit an offense under section 1503, 1512, or 1513 of this title, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose a condition of release that such person not commit an offense under section 1503, 1512, or 1513 of this title and impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:

(1) place the person in the custody of a designated person or organization agreeing to supervise him;

(2) place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) require the execution of an appearance bond in a specified amount and the deposit in

the registry of the court, in cash or other security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;

(4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.

7. 18 U.S.C. § 3146(b) provides:

(b) In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

required to do so in the past. Appellants Paul John Leisure, Anthony J. Leisure, Broderick, and Loewe each have been arrested one or more times but have no convictions. Appellants David R. Leisure, Ramo and Wougamon each have some kind of criminal record, have been released on bond in the past and appear to have never failed to appear at court proceedings. These factors support our conclusion that bail in an amount substantially less than the amounts set by the district court would be reasonably calculated to assure appellants' appearance at trial.

 The nature and circumstances of the offense charged and the weight of the evidence against the accused are also factors to be considered. Appellants stand accused of very serious and extremely violent crimes. It appears that the government's evidence depends in substantial part upon the testimony of an unindicted coconspirator who has become a government witness. These factors are very disturbing, in particular the allegations that appellants threatened one possible government witness and killed another individual who appellants suspected might have become a government witness. The right to bail in a noncapital case is not literally absolute, and case law has recognized that the courts have the inherent power to ensure orderly trial processes and to protect government witnesses, before trial and during trial, by denying pretrial release on bail in extraordinary circumstances. *See United States v. Gilbert,* 138 U.S.App.D.C. 59, 425 F.2d 490, 491–92 (1969). *Accord United States v. Graewe,* 689 F.2d 54, 56–57 (6th Cir.1982) (per curiam) (pretrial bail denied); *United States v. Wind,* 527 F.2d 672, 674–75 (6th Cir.1975); *United States v. Smith,* 444 F.2d 61, 62 (8th Cir.1971) (per curiam). *Cf. Carbo v. United States,* 82 S.Ct. 662, 668, 7 L.Ed.2d 769 (Douglas, Circuit Justice, 1962) (in proceeding for bail pending appeal of convictions, Justice Douglas, sitting as a Circuit Justice, acknowledged that "the safety of witnesses, should a new trial be ordered, has relevancy to the bail issue" and that "[k]eeping a defendant in custody during the trial 'to render fruitless' any at-

tempt to interfere with witnesses or jurors may, in the extreme or unusual case, justify denial of bail.").

The extension of inherent powers to deny bail during trial to the pre-trial period recognizes that unless the witnesses are protected before trial they and their testimony will not be available at trial. It also recognizes that the court's interests in the integrity of its own processes and the fair administration of justice are not confined to trial but to all proceedings. By protecting witnesses before trial through a defendant's detention, the court is encouraging those witnesses and other potential witnesses to come forward and provide information helpful to the implementation of justice.

*United States v. Graewe,* 689 F.2d at 57. Thus, substantial evidence of conduct which threatens or interferes with government witnesses and jeopardizes the judicial process is relevant in determining whether a defendant should be released under 18 U.S.C.A. § 3146(a) (West Supp.1982). Denial of pretrial bail for this reason must, however, be limited to the exceptional case. *See Carbo v. United States,* 82 S.Ct. at 668; *United States v. Graewe,* 689 F.2d at 56–58.

We do not think that the present case constitutes such an exceptional case. Our conclusion does not reflect a lack of appreciation of either the gravity of the offenses charged or the risk to the government's witnesses. We note that the government's principal witnesses are in the government's witness protection program or in federal custody.

We conclude that the amount of bail set by the district court in the present case is excessive and that the circumstances are not so extraordinary as to warrant the denial of bail. Accordingly, we reverse the order of the district court and order appellants released subject to and upon satisfaction in full of the following conditions.

██ Each appellant is released subject to the condition that such person shall not commit an offense under 18 U.S.C.A. §§ 1503, 1512, or 1513 (West Supp.1982). Each appellant must report daily by tele-

phone and once per week in person to the U.S. Probation Office. Each appellant may not leave the City of St. Louis without the prior approval of the district court.

Appellant Paul John Leisure is to be released upon bail in the amount of $500,000, of which $200,000 is to be secured by a 10% cash deposit, $200,000 is to be secured by real property owned by appellant located at 4900 Nottingham, 4908 Nottingham, and 4912 Nottingham in St. Louis, Missouri, and $100,000 is to be secured by corporate surety or 10% cash deposit or other real property owned by appellant or his relatives or any combination thereof.

Appellant Anthony J. Leisure is to be released upon bail in the amount of $500,-000, of which $200,000 is to be secured by a 10% cash deposit, $200,000 is to be secured by real property owned by appellant located in Jefferson County, Missouri, and $100,000 is to be secured by corporate surety or 10% cash deposit or other real property owned by appellant or his relatives or any combination thereof.

Appellant David R. Leisure is to be released upon bail in the amount of $500,000, of which $200,000 is to be secured by a 10% cash deposit, $200,000 is to be secured by real property owned by appellant located at 5469 Neosho in St. Louis, Missouri, and $100,000 is to be secured by corporate surety.

Appellant John F. Ramo is to be released upon bail in the amount of $150,000, to be secured by a 10% cash deposit and by real property owned by appellant and located at 3459 Grace in St. Louis, Missouri.

Appellant Ronald Joseph Broderick is to be released upon bail in the amount of $100,000, to be secured by a 10% cash deposit and by real property owned by appellant and located at 4647 Michigan in St. Louis, Missouri.

Appellant Charles M. Loewe is to be released upon bail in the amount of $100,000, to be secured by a 10% cash deposit and by real property owned by appellant and located at 3836 Keokuk in St. Louis, Missouri.

Appellant Steven T. Wougamon is to be released upon bail in the amount of $150,-000, to be secured by a 10% cash deposit and by real property valued at $40,000 owned by appellant or his relatives.

All financial arrangements must be approved by the district court. Prior to the release of each appellant, the U.S. Marshal is directed to notify the City of St. Louis Circuit Attorney's Office of the release and, if requested by the Circuit Attorney's Office, make any necessary arrangements to transfer custody to the appropriate state authorities.

Accordingly, the motion for expedited appeal is granted and the order of the district court denying appellants' joint motion to reduce bail is reversed. Bail subject to the satisfaction in full of the conditions set forth in this order is granted.

## ORDER
### On Motion For Clarification

On May 17, 1983, this court granted appellants' motion for reduction of bail and granted bail under specific conditions, subject to the supervision and approval of the district court. Appellant Anthony J. Leisure was ordered to be released upon bail in the amount of "$500,000, of which $200,000 is to be secured by a 10% cash deposit, $200,000 is to be secured by real estate owned by appellant located in Jefferson County, Missouri, and $100,000 is to be secured by a corporate surety or 10% cash deposit or other real property owned by appellant or his relatives or any combination thereof."

Proceedings about the satisfaction of the bond requirements had been referred to the magistrate by the district court. On May 25, 1983, appellant, through counsel, submitted to the magistrate various documents pertaining to the real property located in Jefferson County. These documents included the general warranty deed, paid tax bills, and information concerning the balance due on the deed of trust. The government filed a motion for surety, arguing that this court's May 17, 1983 opinion required appellant Anthony J. Leisure to have equity in the amount of $200,000 in the Jefferson County property in order to qualify as surety for that part of the bond and that the

government did not believe that the Jefferson County property was worth $200,000 or that appellant Anthony J. Leisure possessed an equity interest of $200,000 in the property. The magistrate granted the government's motion for surety and the district court adopted the order of the magistrate.

Appellant Anthony J. Leisure immediately filed this motion seeking clarification of the real estate requirement in this court's May 17 order. Appellant Anthony J. Leisure argues that the government erroneously interpreted the real estate requirement. Appellant admits that the Jefferson County property may not be worth $200,000, that the property is subject to a deed of trust, and that his equity interest in the property is less than $200,000.

Following consideration of appellant's motion and the government's response in opposition, we modify the real estate provision in the conditions of appellant's bond by adding the following:

If the real estate in Jefferson County, Missouri, is owned wholly by appellant, the $200,000 part of the bond required to be secured by such property may be satisfied by the pledge of appellant of his equity interest in such property, even though his equity interest may be less than $200,000, with the balance ($200,000 less appellant's equity) to be secured by corporate surety.

The order of the district court granting the government's motion for surety and requiring appellant to pledge an equity interest in the amount of $200,000 to secure bail is vacated. The motion for clarification is granted and this court's opinion of May 17, 1983 granting reduction of bail is modified as set forth above.

The court on its own motion orders that the last four lines on page six of the opinion filed May 17, 1983, be deleted and replaced by the following:

Here, the magistrate set the amount of bail at $1 million cash and $2 million cash. The magistrate stated:

The Court believes that were the defendants released, there is substantial likelihood that retribution would be attempted against witnesses against them. The pendency of capital offenses in the Missouri state court is another factor creating a substantial incentive on the part of the defendants to flee.

It is the opinion of the [court] that, with regard to all above-named defendants, there exists an extreme likelihood of flight.

We conclude the district court abused its discretion in refusing to reduce the appellants' bail. All of the evidence adduced before the magistrate indicated that appellants would appear at their trial. We do not think the very substantial cash bonds represent a reasonable calculation of the conditions necessary to assure the appellants' appearance at trial.[7]

JOHN R. GIBSON, Circuit Judge, with whom ROSS and FAGG, Circuit Judges, join, dissenting from denial of petition for rehearing en banc.

I respectfully dissent from denial of rehearing. I think the court en banc should rehear this case and affirm the order of the district court with respect to bail.

The original opinion filed by the panel gives no indication that it is reviewing findings of the district court, but rather appears to make findings of its own in setting aside the order of the district court. With the order entered June 10, the panel concluded that the district court abused its discretion in refusing to reduce the appellants' bail.

We are directed that with respect to orders concerning release on bail "any order so appealed shall be affirmed if it is supported by the proceedings below." 18 U.S.C. § 3147(b). I believe that the proceedings below support the order entered by the district court and that this court is not justified in reversing its action and substantially reducing the amount of the bail required.

The panel opinion primarily deals with, and its order was based upon, the likelihood of flight. The panel concludes that there was abuse of discretion by the district court because all of the evidence indicated that appellants would appear at their trial. It

also considers the issue under the inherent power of the courts to insure orderly trial processes and protect government witnesses. The panel properly recites the principles underlying this theory as explained in *United States v. Graewe,* 689 F.2d 54, 57–58 (6th Cir.1982) and *Carbo v. United States,* 82 S.Ct. 662, 667–68, 7 L.Ed.2d 769, 775–76 (Douglas, J., 1962). I would conclude that the district court did not abuse its discretion in finding the likelihood of flight and further that there were such exceptional circumstances that its order could be supported under the inherent power theory.

The circumstances were set out in the findings of the magistrate adopted by the district court as follows:

> [T]he government has very substantial evidence against all of the defendants in this action. Statements of three eyewitnesses have implicated the defendants in the killing of James Michaels, Sr., the shooting of John Charles Michaels, the death of George Fayheen, and the death of Michael Kornhardt. Evidence indicates that Kornhardt's death occurred because it was felt he might become a government informant.

The court continued:

> The evidence adduced at the hearing clearly indicated that the defendants have previously been involved in violent retribution against others. The death of Kornhardt, evidence showed, resulted from a fear he may become a government informant to obtain leniency. The Court believes that were the defendants released, there is a substantial likelihood that retribution would be attempted against witnesses against them.

The record abundantly supports these findings. There was testimony that Kornhardt was a witness of the placement of the explosive device in George Faheen's car which exploded causing Faheen's death. T. I–35. The testimony established that plans were made to take Kornhardt to St. Charles County to kill him so as to be away from the St. Louis police. T. I–41. It was feared

that following Kornhardt's arrest, he might assist law enforcement officers in its investigation. T. I–39. The record is replete with testimony of the construction of bombs and detailed planning of the place and method of killing targeted individuals. T. I–49.

If these are not such exceptional circumstances as to justify the order of the district court on the ground of protection of orderly trial processes and protection of government witnesses, then the rule has no meaning. Testimony of planned murder to eliminate witnesses supports the findings of the district court, and the order it entered. We should rehear, and affirm.