| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN ) MARIANA ISLANDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOSE R. SANTOS, ) <br> VICENTE R. SANTOS, and ) <br> FRANCISCO R. SANTOS, ) <br> ) <br> Defendants. ) <br> ) | CRIMINAL CASE NOS. 87-132 and 87-147 <br><br> ORDER <br> RE:  GOVERNMENT'S MOTION <br> FOR BAIL MODIFICATION |

The  Government's  motion to modify the bail order entered by the Court on July 31, 1987, as to  the  above  three  defendants, was  heard  August 5-6,  1987.   All three defendants appeared in person and with counsel and opposed the motion.

In support of  the  motion  was  an  affidavit  of  a  police officer  to  the  effect  that  the  defendants'  mother  had approached the mother of a key government witness  and  requested her  to  have  the  witness  not testify.  Further, the affidavit stated  that  a  reliable  informant  had  given  information  to another  police  officer  that  the  defendants,  Francisco  and Vicente,  while  in  custody,  had conversation with a person not in custody to kill  a  person  the  two  believed  was  a  police informant.

133

Soon after the bail order of July 31st was issued, the Government immediately filed a new information[1] against the above three (3) defendants alleging a perjury charge as to Jose, a charge of possession of marijuana with intent to deliver as to Francisco, three new charges of receiving stolen property as to all three defendants, and a charge of solicitation of murder as to Francisco and Vicente. Arrest warrants were issued by the Court and bail was set at $10,000 cash each (no property alternative) as to Francisco and Vicente, and $5,000 cash (no property alternative) as to Jose.

At the start of the hearing, the court decided that, to the extent that the new information is related to or appears connected with the charges in Criminal Action No. 87-132, arguments and/or presentations as to the imposition of bail in the new case (Criminal Action No. 87-147) will be heard and considered together with the Government's present motion to modify bail.

At the threshold, the court heard arguments as to the Government's suggested procedure for the hearing. It requested that the court, in order to protect the identity of the Government informant and persons allegedly at risk, allow the Government to provide the defendants with only a summary of the informant's affidavit, and for the informant's sealed affidavit to be reviewed by the court alone in camera, following the

_____

[1]/ Criminal Action No. 87-147

procedures laid out in United States v. Stanford, 551 F.Supp. 209 (Md., 1982). The defendants objected to the Stanford procedure, as violative of their rights to confront the allegations in the affidavit, and they cited United States v. Accetturo, 783 F.2d 382 (3rd Cir., 1986), in support.

Although Accetturo did not agree with the Stanford procedure vis-a-vis in camera inspection by the court of an informant's sealed affidavit, Accetturo did note that on rare occasions in camera presentations could be sanctioned, but only where there is a compelling need and there is no alternative means of meeting that need. Accetturo, at 391. This court believes that the protection of confidential informants is such an occasion, provided that a police officer who was given the information by the informant testifies as to the accuracy and reliability of the informant who provided the information, and further that questioning by the defense does not delve into trying to obtain the identity of the informant or witnesses sought to be protected, either directly or by a line of questioning that would reveal such identity through a process of elimination.

The court, after hearing arguments, ruled on the following modified Stanford procedure:

(1) For the Government to provide the defense a summary of the sealed affidavit;

(2) For the Government to provide the court such summary and the sealed affidavit itself for _in camera_ inspection and review by the court alone; and

(3) For the Government to make available for questioning the police officer, who was given the information (and affidavit) by the alleged informant, to testify to questions limited to reliability and credibility of the informant, so long as the questions do not go to revealing the source of the information or the identity of those persons sought to be protected. The defense noted their objection to such a procedure.

The thrust and focus of the hearing centered on the allegation with respect to the charge of solicitation of murder by defendants Francisco and Vicente.

Detective Sergeant Jose Camacho testified that he obtained an affidavit from the informant, that the affiant is employed, and that he is reliable. He further testified that he (Det. Camacho) received the information six days prior, and reconfirmed it 2-3 days later. He knew the informant since childhood, and the latter had previously provided reliable information on about ten (10) other occasions. The informant was never paid on those occasions, as well as the present one. He stated that the informant overheard the defendant Francisco making the statement at issue, and the statement was made with Francisco's back turned.

To rebut the allegation regarding the seriousness of the alleged statement of solicitation, Francisco's counsel called two witnesses: Ramon DLG. Aldan and Joaquin Lizama. Francisco argued that Mr. Aldan was a witness to the only conceivable conversation which led to the present charge of solicitation of murder.

Aldan testified having been at the police station to report an auto accident. The defendants Vicente and Francisco were, at the time, present at the station's front desk area. Aldan heard Francisco say something to the effect that "if not because of Mr. Lizama, they would not be in prison," and thus wanted Lizama killed; but Aldan could not tell whether he (i.e. Francisco) was joking, although they were laughing. At the time the statement was made there were four police officers around.

Joaquin Lizama next testified that the defendants were his first cousins, that he works at the power plant, that there has never been an attempt on his life by the defendants, and that he visits the defendants' family regularly. When he heard about the statement of Francisco from Ramon Aldan, he started laughing he said.

At issue before the court is whether the statement allegedly made by Francisco and Vicente to kill somebody was serious enough to warrant a finding that Francisco and Vicente would, if released, constitute a threat to live and safety of Commonwealth citizens in general, and witnesses or informants in particular.

137

The court has reviewed the Summary of Affidavit and has reviewed and inspected _in camera_ the sealed affidavit of the Government informant.

The testimony of Sgt. Camacho attested his belief that the informant was credible and reliable, as to the information given. The summary of affidavit shows a fear by the affiant of retaliation if identified by the defendants' family, and restates the affiant's having heard Francisco and Vicente asking a certain person to kill someone whom they believed was responsible for their present incarceration as a government informant. Finally, the summary stated that the statements and requests (of Francisco and Vicente) were made in a serious and not joking manner.

A review of the sealed affidavit, in conjunction with the affidavit of Sgt. Edward Pua, the testimony of Sgt. Jose Camacho, and the other witnesses, as well as the summary provided, leads this court to find that in fact Francisco did utter a statement to the effect of wanting to kill someone whom he believed was responsible for their incarceration. He appears to have made the statement in a serious manner in front of several people, including the alleged informant and in the immediate vicinity of four police officers.

In reviewing the apparent context in which the statement to kill was made, however, the court is not convinced that it rises to a level which constitute an actual threat to the life of the alleged Government informant and others. The statement

was made in public (as opposed to secrecy); it appears to have been made in anger, but in a laughing manner; and was made to someone (at the police front desk) who had come to file an accident report.

The court is mindful of the Government's strong concern for the public safety, the protection of informants and government witnesses from threats and intimidations and fear of life and safety. The basis, however, for revocation of bail or the imposition of a high cash bail, must rest on allegations which appear to be reasonably objective, rather than mere suspicion.

The court agrees with the Government's position that trial courts have the inherent power to revoke or modify the bail set for a defendant to ensure an orderly trial process, as for example where there is intimidation or threats to witnesses by a defendant, directly or indirectly through others. See, for example, Unites States v. Graewe, 689 F.2d 54 (6th Cir., 1982). The inherent power to revoke bail, however, should be exercised only in an extreme and unusual case. Id., at 57.

Dangerousness is a factor that the court has to consider in setting or revoking bail, contrary to defendants' contention, but such factor must be real, not speculative. With the exception of the charge of solicitation of murder, the bulk of the charges are burglary and theft offenses. There is no showing that any of the three defendants have murdered or killed someone, or have a propensity for violence.

The alleged interference of witness tampering was not made by any of the three defendants, but by their mother who allegedly asked the mother of a key Government witness to have the latter not testify.

Based on the foregoing; therefore,

IT IS HEREBY ORDERED that the Government's motion to modify bail be and it is hereby DENIED.

As to the cash bail set by the court with respect to the new charges in Criminal Action No. 87-147, bail is hereby reduced as follows:

$5,000 cash bail each (with no property alternative) shall be posted, in order to secure their release, by Francisco, Vicente, and Jose.

In the event bail is posted, the conditions noted in paragraph #4 of the bail order of July 31, 1987 shall apply to each defendant.

Dated at Saipan, CM, this 10th day of August, 1987.

Jose S. Dela Cruz, Associate Judge