Frank GAVINO, Petitioner,

v.

Hon. Lloyd F. MacMAHON, United States District Judge, Southern District of New York, Sitting by Designation in the Northern District of New York, Respondent.

UNITED STATES of America, Plaintiff,

v.

Frank GAVINO et al., Defendants.

No. 1184, Docket 74–1785.

United States Court of Appeals, Second Circuit.

Argued June 11, 1974.

Decided June 14, 1974.

Sanford M. Katz, New York City, and H. D. Stave, Forest Hills, N. Y., for petitioner.

Paul V. French, Asst. U. S. Atty. (James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., Thomas P. O'Sullivan, Asst. U. S. Atty., Albany, N. Y., of counsel), for respondent.

Before HAYS and MANSFIELD, Circuit Judges, and BAUMAN, District Judge.[*]

PER CURIAM.

Frank Gavino, a resident of Tucson, Arizona, and one of five defendants named in an indictment filed in the Northern District of New York charging violation of the narcotics laws, 21 U.S.C. §§ 841(a)(1) and 846, has petitioned us for a writ of prohibition and mandamus directed to Judge Lloyd F. MacMahon, sitting by designation in the Northern District of New York, to stay an order issued by him in open court on June 7, 1974, revoking Gavino's bail and directing all defendants to proceed to trial before him on June 17, 1974, even though the indictment had been filed in April, 1974, and the defendants had been arraigned in May 1974 (one as late as May 20). The petition is granted.

On April 10, 1974, a federal grand jury sitting in Albany, New York, filed an indictment charging Frank Gavino, Harvey Lawrence, Allen Smith, Kenneth Adler, and William Barber with conspiracy to violate § 841(a)(1) and defendants Barber and Lawrence with possession of narcotics with intent to distribute in violation of that section. Gavino was thereafter arrested in Tucson, Arizona, and held in custody after he was unable to furnish bail in the sum of $150,000. On May 6, 1974, Gavino, appearing with his counsel, Sanford M. Katz, Esq., was arraigned before Chief Judge James T. Foley, who reduced Gavino's bail to $2,000, which was posted. May 20th was fixed as the date for filing of motions. However, Adler was not arraigned until May 20. All parties were then given until June 3d to file motions. The Clerk was further direct-

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

ed to put the case on the Auburn, New York, calendar for trial before Judge MacMahon, to whom it had been assigned, during the June term.

On June 3, 1974, in response to defense motions for pretrial discovery, including bills of particulars and electronic surveillance, and for dismissal, severance and other relief, the government made available to the defendants extensive discovery material. At the same time, after ruling on all other motions, Chief Judge Foley advised counsel that Judge MacMahon had set the case for trial on June 17. In response to requests for postponement defense counsel were advised to move before Judge MacMahon in Auburn, New York. Motion papers seeking a continuance were hastily prepared by counsel for Gavino, Adler and Barber, advising of the need for additional time.

On June 7, 1974, Judge MacMahon heard the motions for continuance of trial, which were joined in orally by counsel for the defendant Lawrence. Gavino's counsel confirmed that he was presently engaged in the trial of a murder case in the New York County Supreme Court, which would last for at least two weeks. He further advised that based upon his interview of Gavino and the discovery material that had been turned over by the United States Attorney on June 3d it would be necessary for him as part of his preparation for trial to proceed to New Mexico and Mexico to interview prospective witnesses. The Assistant United States Attorney in charge of the case advised the court and ourselves that he had no objection to a continuance of the trial. Before being cut off by Judge MacMahon he further sought—wisely in our view—to advise the court (as he has advised us by affidavit) "that if the continuance were denied it may [lead] to a subsequent appeal based on the rationale of lack of effective counsel, with respect to the defendant Gavino, due to the remoteness of counsel from his client, and counsel's statement that he has only conferred with his client on one occasion and

[that] due to other responsibilities [he] would not be able to confer with his client until trial."

The scene which ensued is disclosed by the following portion of the transcript:

"The Court: All right. I am revoking the bail, I want to appoint other counsel, this lawyer is too busy to handle this case.

"Mr. Katz: Your Honor, the trial date—

"The Court: I am removing you from the case, sir, you are not ready to go on adequate notice, you have more business than you can handle. This court's business cannot wait to suit your convenience.

"Mr. Katz: Sir, it was never anticipated that we would proceed to trial within one month of arraignment and—

"The Court: The United States Judicial Conference has had a resolution requiring all criminal cases to be tried within sixty days. Get with it. Here is an April indictment—

"Mr. Katz: April of 1974.

"The Court: I have ruled, counsel, if you are not here, revoke the bail, issue a warrant, get him back to this district to appear before me forthwith as soon as he can.

"Mr. Katz: Well, if Your Honor please, there is no basis for it, the trial date is June 17, he hasn't violated—

"The Court: Take it up with the Court of Appeals.

"Mr. Katz: I will, sir.

"The Court: I am revoking the bail. You won't interfere with the trial date of this case, as this is a multiple defendant case in which there are a number of defendants. The Government is ready to go. The court has been sent up here to this district from New York to relieve the congested calendar and try these cases, and these sort of excuses, counsel otherwise engaged, and you have to inter-

view and this and that simply won't go.

"Mr. Katz: Your Honor—

"The Court: I am revoking the bail, so we can get him here solely for the purpose of advising him of his rights to counsel and get other counsel.

"Mr. Katz: I will undertake, as an officer of the court, to advise him accordingly. There is no need to have him brought under arrest from Tuscon [sic], Arizona, to this district. He has violated no condition of his bail.

"The Court: One of the conditions of bail is he be here prepared to proceed when the court is ready to proceed."

Having thus disposed of Gavino's motion, Judge MacMahon turned to that of defendant Kenneth Adler, who was represented by Howard Stave, Esq. The transcript continues:

"Mr. Stave: I wish to point out to the court my client was arraigned on May 20. I made motions returnable June 3rd. I had co-counsel in Albany County handle the arraignment, and I submitted the motion to Judge Foley on June 3rd. I was not advised of this calendar situation until the late evening of June 3rd when co-counsel advised me. I never received a notice.

"The Court: So what?

"Mr. Stave: If I might, I received in the mail on Wednesday afternoon the Government's discovery. I have not had a chance to discuss this case. My client was originally apprehended in Little Rock, Arkansas. We brought him back the next day. He just came back to Long Island to work. I am really, Your Honor, not prepared. I have a murder case on the calendar of Queens County on June 17.

"I would respectfully request the court to consider that. I submitted an affidavit to Your Honor that this case be allowed to be adjourned to September 3, at which time I will absolutely warrant and represent to the court, that is the first day of the term, I will be ready for a trial, because I have not been properly notified. My client on May 20 was first arraigned. This is only June 7. I would humbly beseech the court to consider the fact that my client's rights may be prejudiced. I do not think—

"The Court: Where is your client? What is his bail?

"Mr. Stave: My client is on $5,000 bail. He is available, no problem about that.

"The Court: Revoke his bail and get him up here.

"Mr. Stave: Judge, may I say this, Judge, please. He is available to me. What I am saying to you is that I think—

"The Court: I want him up here before the court.

"Mr. Stave: Well, Judge, I will bring him up here on June 17.

"The Court: Ready to go to trial?

"Mr. Stave: I prefer not to.

"The Court: I am not asking you what you prefer. I am directing you to be here prepared to go to trial with the witnesses and ready to go. Unless you can represent to this court that you are in all respects ready to do so, I will revoke your client's bail, get him out here and substitute counsel.

"Mr. Stave: I represent to the court I will bring him up here on June 17 to go to trial. Nevertheless, I would still, if I might, just press a bit further. Considering the situation, Judge, where I have just been notified, I just got the documentation, I would greatly ask the court's discretion, that is all I am doing here, to ajourn this case to September to give us more time.

"The Court: I am not adjourning this case for over 90 days. That is ridiculous in a narcotics case. No.

"All right.

"Mr. Cheeseman: Your Honor, my client also was not arraigned until late

in May, and just this Monday we also were furnished with voluminous material as a result of motions we brought.

"I was surprised to hear that the case was set down for the 17th, and I approached Judge Foley, and it is at his suggestion that I came out here, and I thought that perhaps by asking a favor of you, I might get the case put over.

"Now before we go any further, if I am ordered by this court to be here the 17th, I will be here with my client the 17th, and I will go through the formalities of a trial, but in all honesty, Your Honor, I don't see how I can be prepared in such an important case where I have literally dozens of witnesses yet to interview. If you tell me to do it, I will do my best, but it won't be good enough.

"The Court: I am directing you to do it."

In contrast to Judge MacMahon's determination to bring the case to trial immediately, Assistant United States Attorney O'Sullivan simply stated that the government did "not object to the continuance" of the case. This petition for a writ of mandamus followed.

## DISCUSSION

The appealability, as a "final decision," 28 U.S.C. § 1291, of an order unlawfully denying bail prior to trial in a noncapital case is settled. Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); United States v. Foster, 278 F. 2d 567 (2d Cir.), cert. denied, 364 U.S. 834, 81 S.Ct. 48, 5 L.Ed.2d 60 (1960); United States v. Bentvena, 288 F.2d 442 (2d Cir.), affd., 81 S.Ct. 642 (1961); United States v. Gilbert, 138 U.S.App. D.C. 59, 425 F.2d 490 (1969).

" 'Unless this right to bail *before trial* is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.' [Emphasis supplied.]" United States v. Bentvena, 288 F.2d at 445, quoting Stack v. Boyle, 342 U.S. at 4.

Since "[r]elief in this type of case must be speedy if it is to be effective," 342 U.S. at 4, recourse to appellant review, by way of an interlocutory appeal pursuant to the reasoning of Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), has been recognized, see United States v. Foster, *supra* at 570 (Friendly, C. J., concurring), and we have on occasion entertained an application in the form of a "motion, subject to the filing of an appropriate notice of appeal," see United States v. DiPietro, 302 F.2d 612 (2d Cir. 1962). Because of the extreme urgency of the present application, the readily apparent absence of any justification for the district court's action, and the irreparable harm that would result to petitioner if the district court's order were enforced, we have entertained the application for mandamus relief. See Woodcock v. Donnelly, 470 F.2d 93, 94 (1st Cir. 1972).

The Bail Reform Act, 18 U.S.C. § 3146, et seq., like its predecessor, Rule 46(a)(1), F.R.Cr.P., guarantees that in a noncapital case the defendant will have the pretrial right to release on bail except in extreme and unusual circumstances, e. g., where threats to a government witness would jeopardize the court's own processes, see Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962) (memorandum opinion of Mr. Justice Douglas). Although the trial judge is accorded discretionary power during trial to revoke bail where such drastic relief is essential to insure the orderly progress of an on-going trial, see Fernandez v. United States, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (memorandum of Mr. Justice Harlan), such power must be "exercised with circumspection," United States v. Bentvena, *supra* at 445, and does not extend to revocation of bail before trial, which is the situation confronted here.

Judge MacMahon's sole excuse for his sudden and unexpected revocation of Gavino's bail was that since Gavino's counsel, because he was presently

engaged on trial elsewhere, could not be ready for trial on June 17, the Judge wished to have Gavino taken into custody and returned immediately from Arizona so that the court could "appoint other counsel" to represent him. Even accepting the district judge's discretionary power to refuse to recognize an attorney's pending engagement in another criminal case as a valid basis for postponement of trial, the revocation of Gavino's bail was wholly unjustified and represented arbitrary and capricious action. There was no evidence that Gavino had violated the conditions of his bail or that he would not return immediately to the jurisdiction if so directed by the court. The revocation of bail because of his counsel's unavailability for trial would unquestionably violate his fundamental rights.

■ Even assuming *arguendo* that, unless Gavino's bail was revoked, the case could not be brought to trial on June 17th, no reasonable ground appears for such impetuous and precipitous action. It is true that the prompt disposition of criminal cases has been a matter of continuing concern to the Circuit Council for the Second Circuit, leading to the promulgation on January 1, 1971, of "Second Circuit Rules Regarding Prompt Disposition of Criminal Cases," effective July 5, 1971, which were superseded by the "Plan for Achieving Prompt Disposition of Criminal Cases" adopted by each of the Districts within the Second Circuit, including the Northern District of New York, effective April 1, 1973. As we said in promulgating the Rules, however, they were intended to promote disposition of criminal charges with *"reasonable* dispatch," uninhibited by delays "for which there is no good reason." They were never designed to permit a district court to ride roughshod over the right of a defendant to prepare for trial. Indeed they were aimed principally at prosecu-

torial delay, see Hilbert v. Dooling, 476 F.2d 355, 357 (2d Cir.) (en banc), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L. Ed.2d 123 (1973), and provide that the government must be ready for trial within six (6) months from the date of arrest, subject to exclusion of certain periods of delay recognized by Par. 5. Here the district court seeks to bring this multi-defendant criminal case to trial approximately one (1) month after the arraignment of the defendants and two (2) weeks after extensive pretrial discovery, despite the requests of defendants for a reasonable time to prepare and to interview witnesses, some of whom are located in New Mexico and Mexico, and despite the willingness of the government to consent to a reasonable adjournment.

Without minimizing the importance of the public interest in prompt disposition of criminal cases, we cannot allow our concern with calendar dispatch to triumph over a defendant's right to a fair trial, which is the foundation of our system of justice. To sacrifice a fair trial to the interest of expedition would surely undermine the true administration of justice. See Stans v. Hon. Gagliardi, 485 F.2d 1290, 1292 (2d Cir. 1973). Nor does the criminal caseload of the Northern District indicate cause for emergency measures. As of the end of May, 1974, there were 170 criminal cases pending in that district,\* of which only 5 cases were more than six (6) months old. Monthly Caseload Status Report, District Court for the Northern District of New York for Month Ending May, 1974; General Case Report, Form 74, prepared by United States Attorney for the Northern District of New York.

The respondent's revocation of defendant Gavino's bail exceeded the court's powers and, in connection therewith, his refusal to grant a reasonable adjournment of trial represented a gross abuse of discretion. Accordingly, the

---

\* We are further advised by the United States Attorney for the Northern District of New York that approximately 100 of the 170

cases must be held in abeyance because the defendants are fugitives from justice.

petition is granted. The writ will issue directing respondent to vacate the order revoking the bail of the defendant Frank Gavino and to postpone the trial of the action until a date not earlier than July 24, 1974.