**UNITED STATES of America**

v.

**Penyu Baychev KOSTADINOV, a/k/a "Penyo B. Kostadinov", a/k/a "Penu B. Kostadinov", Defendant.**

**No. 83 Cr. 616 (Part I) (DNE).**

United States District Court, S.D. New York.

Oct. 19, 1983.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Ruth G. Wedgwood, Asst. U.S. Atty., New York City, and Richard Scruggs, Atty., U.S. Dept. of Justice, of counsel), for Government.

Wolf, Popper, Ross, Wolf & Jones, New York City (Martin Popper, New York City, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

### EDELSTEIN, District Judge:

Defendant Penyu Baychev Kostadinov was arraigned on September 24, 1983 before Magistrate Nina Gershon on two counts of espionage. Magistrate Gershon ordered defendant Kostadinov be remanded without bail pending trial. The defendant was indicted on September 30, 1983 for attempted espionage in violation of 18 U.S.C. § 794(a) and for conspiracy to commit espionage in violation of 18 U.S.C. § 794(c). On October 6, 1983, he entered a plea of "Not Guilty" before the court and moved for release on bail pending trial.

### BACKGROUND

Defendant Penyu Baychev Kostadinov, an employee of the People's Republic of Bulgaria working out of the Office of the Bulgarian Commercial Counsellor in New York City, was arrested on September 23, 1983, after meeting at the Top of the Park Restaurant in the Gulf and Western Building in Manhattan. The government alleges that at this meeting defendant Kostadinov obtained a Department of Energy document entitled "Report on Inspection of Nevada Operations Office," which was classified as "Secret" and concerned security procedures for nuclear weapons at a Nevada testing site. This document was stamped on the cover with the designation of "Secret" and "National Security Information," and bore a stamped legend that unauthorized disclosure was subject to criminal prosecution. The government further contends that at this meeting defendant Kostadinov solicited an American citizen to obtain over thirty other classified documents pertaining to sensitive subjects, including five documents classified as "Secret" and nine documents classified as "Confidential." Unbeknownst to Kostadinov the person he solicited was cooperating with the Federal Bureau of Investigation. According to the government, defendant Kostadinov informed the cooperating citizen that the documents could be obtained over a long period of time and that he looked forward to a relationship over many years.

Defendant Kostadinov was arrested as he left the Gulf and Western building with the classified Department of Energy report in his possession. The "shopping list" of classified documents sought by Kostadinov was in turn recovered from the cooperating citizen.

Kostadinov was arraigned the next day on September 24, 1983, before the Honorable Nina Gershon, United States Magistrate, on a complaint charging him with attempted espionage and conspiracy to commit espionage in violation of Title 18, United States Code, Sections 794(a) and 794(c). After hearing the arguments of counsel for the government and counsel for the de-

fense, Magistrate Gershon ordered defendant Kostadinov be held without bail pending trial.

On September 30, 1983, the Grand Jury indicted defendant Kostadinov for attempted espionage in violation of 18 U.S.C. § 794(a)[1] and for conspiracy to commit espionage in violation of 18 U.S.C. § 794(c).[2] On October 6, 1983, the defendant was arraigned on this two-count indictment, and entered a plea of "Not Guilty" before this court, presiding in Part I. At this same proceeding, defense counsel submitted a one-page letter from the Ambassador of the People's Republic of Bulgaria stating that defendant Kostadinov was immune from arrest, detention, and prosecution under the Vienna Convention on Diplomatic Relations, 23 United States Treaties 3227, 3229 and that if defendant Kostadinov were "released in [the Ambassador's] personal custody," the Ambassador would assure the court that Kostadinov would attend all court proceedings.[3] Defense counsel also moved for the defendant's release on bail pending trial.

The court stated that the claim of diplomatic immunity raised by the Ambassador was not properly before the court since the Ambassador has no standing to act as defendant's legal representative. The court permitted the government an opportunity to respond to defendant Kostadinov's motion for release on bail.[4]

In its papers submitted to the court defendant took the position that his motion for release on bail should be granted on the grounds that the assurance of the Ambassador of the People's Republic of Bulgaria significantly reduces the risk of flight and that under the Bail Reform Act, 18 U.S.C. § 3146, *et seq.,* there is a strong presumption, particularly before trial, of a defendant's right to bail no matter what the offense. The government, on the other hand, pointed to the extraordinarily serious nature of the charged offense and its severe penalties, the heavy weight of the evidence against the defendant in proof of that charge, the defendant's lack of any meaningful ties to the United States, and the defendant's evident loyalty to the People's

1. 18 U.S.C. § 794(a) provides:
   Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to communicate, deliver or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, pan, map, model, note, instrument, appliance, or information relating to the national defense, shall be punished by death or by imprisonment for any term of years or for life.

2. 18 U.S.C. § 794(c) provides:
   If two or more persons conspire to violate this section, and one or more of such persons do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be subject to the punishment provided for the offense which is the object of such conspiracy.

3. The Ambassador's letter to the court, dated October 5, 1983, was placed on the record in *haec verba,* and reads as follows:
   Dear Judge Edelstein,

   As Ambassador of the People's Republic of Bulgaria to the United States of America, I hereby give this Court the assurance of my Government and my personal assurance, that if Mr. Penyu B. Kostadinov, a national of Bulgaria, and a member of the administrative and technical staff of the Embassy of Bulgaria, is released in my personal custody, he will be present in the Federal Courts of the United States at any and all times required by the United States Government, or an order of an appropriate United States Court, so long as the proceeding in which he is now a defendant is pending. I call the Court's attention to the fact that Mr. Kostadinov is entitled to immunity from arrest, detention, or prosecution under the provisions of the Vienna Convention on Diplomatic Relations.
   I express my respect for the responsibilities of the Court.

4. In a pre-trial conference held later in the day on October 6, 1983 before the Honorable Vincent L. Broderick, to whom the trial of the case was assigned, Judge Broderick stated that the bail hearing could appropriately be handled by the Part I judge since the hearing had already begun in Part I. Transcript of October 6, 1983, at page 3.

Republic of Bulgaria. The government argued that these factors together create an extreme risk that, if released, the defendant would flee to avoid prosecution and the possible penalty of lifetime incarceration. The government therefore urges the defendant be remanded.

## DISCUSSION

The Bail Reform Act, 18 U.S.C. § 3146, *et seq.*, like its predecessor, Fed.R.Crim.P. 46(a)(1), carries a strong presumption in favor of releasing a defendant on bail pending trial in a noncapital case. After all, "[u]nless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). Release on the accused's personal recognizance or upon the execution of an unsecured appearance bond is the preferable release method under the Act. If such nondemanding restrictions will not reasonably assure the appearance of the accused, the court has wide latitude under the Act to impose conditions of release that in the court's judgment will assure appearance.

The right to pretrial bail in a noncapital case, however, is not absolute. While 18 U.S.C. § 3146 does not explicitly authorize the denial of bail in a noncapital case prior to trial,[5] it has been repeatedly held that a defendant may be remanded without bail pending trial under extreme and unusual circumstances. *United States v. Abrahams,* 575 F.2d 3 (1st Cir.) (pretrial bail properly denied to defendant who had lived life of subterfuge, deceit and cunning, who was an escaped felon and who had previously forfeited a $100,000 bond to avoid a removal hearing), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *United States v. Graewe,* 689 F.2d 54 (6th Cir.1982) (pretrial bail properly denied to defendant in light of testimony that he had participated in the murder of two informants and his associates were threatening potential witnesses subsequent to the indictment); *United States v. Kirk,* 534 F.2d 1262, 1280–81 (8th Cir.1976) (pretrial bail properly revoked where there was substantial evidence that defendants were involved in the deaths of three witnesses), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581 and 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977). The Second Circuit has made clear in dicta that courts have authority under 18 U.S.C. § 3146 to deny pretrial bail in a noncapital case. *See Ostrer v. United States,* 584 F.2d 594, 599 (2d Cir.1978); *Gavino v. MacMahon,* 499 F.2d 1191, 1195 (2d Cir.1974).

■ This authority derives logically from the primary purpose of bail, which is to allow an accused person not yet tried to be free of restraint while at the same time insuring that person's presence at the pending court proceedings. When no combination of workable conditions of release will reasonably assure appearance at trial pretrial bail may be denied under 18 U.S.C. § 3146.[6] *See Ostrer v. United States,* 584 F.2d 594, 599 (2d Cir.1978) ("undue risk of

---

**5.** Unlike 18 U.S.C. § 3146, the section governing release in capital cases, 18 U.S.C. § 3148, specifically authorizes courts to deny pretrial bail when "no one or more conditions of release, will reasonably assure that the person will not flee or pose a danger to any other person or to the community." It can be argued that since Congress chose not to include a similar provision in 18 U.S.C. § 3146, it did not intend to authorize courts to remand defendants without bail in noncapital cases regardless of the circumstances. The overwhelming case law to the contrary—not one decision holds that 18 U.S.C. § 3146 gives defendants an absolute right to bail—however, negates this argument.

**6.** In this case an alternative source of authority for denial of pre-trial bail may exist in 18 U.S.C. § 3148, which governs release in capital cases. This section specifically provides that pretrial bail may be denied where there is an undue risk of flight. Although the government concedes that it will not seek the death penalty in the present case in part because of the uncertainty raised by the Supreme Court decision *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), regarding the constitutionality of existing procedures for implementing the death penalty, *see* "Government's Memorandum in Support of Continued Remand of Defendant Kostadinov" at pages 11–12, at least one case suggests that the offense for which the defendant is charged remains a capital offense for purpose of the release provisions of 18 U.S.C. § 3148. See *United States v. Kennedy,* 618 F.2d 557 (9th Cir.1980).

flight" ground for denial of pretrial bail); *United States v. Melville,* 306 F.Supp. 124, 127 (S.D.N.Y.1969).

■ The denial of pretrial bail in a non-capital case upon a showing of an undue risk of flight is not repugnant to the command of the Eighth Amendment that "[e]xcessive bail shall not be required . . ." *United States ex rel. Covington v. Coparo,* 297 F.Supp. 203, 207 (S.D.N.Y.1969) (Weinfeld, J.). Mr. Justice Brennan has held, however, that the Eighth Amendment requires bail be denied only for the "strongest of reasons." *Truong Dinh Hung v. United States,* 439 U.S. 1326, 1329, 99 S.Ct. 16, 18, 58 L.Ed.2d 33 (1978) (quoting *Sellers v. United States,* 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968) (Black, J., in chambers)) (in chambers). Thus, in *Truong Dinh Hung* Justice Brennan noted that opportunities for flight alone are insufficient grounds for denial of bail. There must also be a showing that, if released, defendant has an inclination to flee. *Truong Dinh Hung v. United States, supra,* 439 U.S. at 1326, 99 S.Ct. at 16.

The statute outlines the relevant factors this court must weigh in determining whether the strongest of reasons exist for supporting the conclusion that no bail conditions will reasonably ensure defendant's appearance at trial.[7] Here these factors include the nature and circumstances of the offense charged, the weight of the evidence against the accused, the defendant's ties to the United States and the Ambassador's assurance that the defendant will appear for trial. *See* 18 U.S.C. § 3146(b).

### I. *Nature of the Charged Offense, Severity of the Penalty, and the Weight of the Evidence*

■ The nature of the crime alleged against defendant Kostadinov—conspiring and attempting to send national defense information to a foreign government with intent and reason to believe that it would be used to the injury of the United States—indicates the likelihood of flight. Espionage differs from all other crimes in one unique, highly significant respect. The purpose of espionage is political: to undermine the government of the United States with a view to its destruction. This goal is shared by all enemies of this country. Countries antagonistic to the United States who would not offer asylum to murderers or thieves very likely will open their doors to one who shares their political purpose inimical to the United States. Bulgaria is only one of the many countries to which defendant Kostadinov can flee. Any country that is an enemy of the United States is a possible haven.

It is beyond doubt that a vast underground and spy network exists in this country and around the world. A spy would undoubtedly have access to many exit routes and to places which would afford him sanctuary as a hero and not as a criminal. In addition, the court cannot close its eyes to the concern that the Bulgarian government knows that its employee might defect, particularly if he faces a life imprisonment. Such a fear could conceivably prompt the Bulgarian government to aid the defendant's flight.

Moreover, the crime alleged against defendant Kostadinov is subject to severe penalties: imprisonment for any term of years, life imprisonment, or death. *See* 18 U.S.C. §§ 794(a), 794(c). In past espionage cases courts have imposed harsh sentences of up to life imprisonment. *See, e.g., United States v. Rudolph Ivanovich Abel,* (S.D. N.Y.1957) (30 years imprisonment on § 794(a) conviction); *United States v. William P. Kampiles,* (D.Ind.1978) (40 years imprisonment on § 794(a) conviction); *United States v. Valdik Aledsandrovich Enger and Rudolf Chernyayev,* (D.N.J.1978) (50 years imprisonment on § 794(c) conviction); *United States v. Christopher J. Boyce,* (C.D.Cal.1977) (40 years imprisonment on § 794 conviction); *United States v. Andrew D. Lee,* (C.D.Cal.1977) (life imprisonment on § 794 conviction); *United States v. Marian W. Zacharski,* (C.D.Cal.1981) (life

---

**7.** Defendant argues that the statute lists these factors only in regard to setting "conditions" of bail. Because courts have read the option of remand without bail into the statute, however, these factors also become the relevant considerations in determining whether to deny bail.

imprisonment on § 794(c) conviction); *United States v. Joseph Helmich,* (M.D.Fla. 1981) (life imprisonment on § 794(c) conviction). It would beggar reality and reject a fundamental truth for this court to ignore one of man's strongest instincts—to flee from danger and to survive at any cost. Given the risk of a conviction that carries a life sentence—cut off from family and friends and country—the defendant would have a nearly irresistable incentive to take advantage of his freedom and flee.

Although the charges against the defendant await the outcome of trial, the evidence against the defendant appears overwhelming. This is another factor pertinent in determining the risk of flight. *See* 18 U.S.C. § 3146(b). The meeting between defendant Kostadinov and the cooperating citizen was recorded on videotape and on an audio recording. *See* "Government's Memorandum in Support of Continued Remand of Defendant Kostadinov" at page 6. Photographs also were taken of the meeting through a concealed still camera. *Id.* The document on Nevada nuclear weapons security procedures was found in defendant Kostadinov's possession when he left the restaurant. *Id.* The "shopping list" of classified documents that was allegedly handed by Kostadinov to the citizen was recovered immediately after the meeting. *Id.* at 6–7.

## II. *Lack of Ties to the United States*

The court concedes that espionage suspects have been appropriately released on bail. This case differs from other espionage cases because, in addition to its seriousness, the defendant lacks any meaningful ties to the United States.

Defendant Kostadinov is a Bulgarian national, born in Burgas, Bulgaria in 1942. He entered the United States in 1979 on a four year tour for the People's Republic of Bulgaria as an assistant commercial counsellor. He was issued an "A–2" visa as a Bulgarian government employee. His tour of duty was scheduled to terminate in May 1983, when he was to return to Bulgaria with his wife and two sons who also are Bulgarian citizens. Kostadinov's temporary assignment to the United States was extended only in the midst of Kostadinov's ongoing cultivation of the American source as a potential espionage target.

Kostadinov is a professional employee of the Bulgarian government. He has not indicated to the court that he has any relatives permanently residing in the United States. Further, no Americans have come forward to vouch for him. The only meaningful ties he has to any country are to the People's Republic of Bulgaria. *Compare Truong Dinh Hung v. United States,* 439 U.S. 1326, 1329, 99 S.Ct. 16, 18, 58 L.Ed.2d 33 (1978), in which Justice Brennan, substituting as a Circuit Court judge, granted an application for bail pending appeal from a conviction on various counts of espionage in part because defendant had "extensive ties in the community." Defendant Kostadinov has no reason to remain in the United States now that a criminal prosecution of the utmost gravity is pending.

The surrender of Kostadinov's Bulgarian passport would constitute no additional assurance, since a passport is not needed to leave the United States. Moreover, if defendant Kostadinov were to take flight to Bulgaria or any other Eastern bloc country, no treaties in effect would require his extradition. The Ambassador's assertion that Kostadinov is wholly immune from American juridical process would serve as a convenient rationalization of Kostadinov's refusal to return.

## III. *The Ambassador's Assurance*

The letter of October 5, 1983 from Ambassador Zhulev of the People's Republic of Bulgaria seeking to take responsibility for the appearance of defendant Kostadinov at trial is accorded the utmost honor and respect. This court does not doubt the sincerity of the Ambassador's personal wish to assure the defendant's appearance in court. Nevertheless, this court is convinced that the Ambassador's personal assurance would not significantly reduce the risk of flight.

It is defendant Kostadinov, not Ambassador Zhulev, who has been charged with espionage and who faces the possibility of life imprisonment if convicted. With his

own liberty and interests at stake the defendant may well not observe the Ambassador's assurances.[8] Moreover, it is a fact of life that ambassadors do not have life tenure. An ambassador serves at the pleasure of the government he represents. He is an employee and agent of that government, and can be removed and replaced at any time for myriad reasons or for no reason at all. The defendant's alleged espionage activities were carried out on behalf of the government of Bulgaria. The Bulgarian government therefore has every incentive to do whatever is necessary, including the removal of its ambassador, to protect defendant Kostadinov and provide him safe conduct.[9]

The defendant cites one past national security prosecution where the assurance of an ambassador was accepted. In *United States v. Enger,* 472 F.Supp. 490 (D.N.J. 1978), a bail of $2 million was initially set by the United States District Court of New Jersey. Subsequently, the government of the United States agreed to a motion to release the defendants upon the personal assurance of the U.S.S.R. Ambassador to the United States, Anatoly F. Dobrynin, that the defendants would appear. The U.S. government's acceptance in that case of the assurance of Ambassador Dobrynin, who was an extremely senior member in the foreign diplomatic corps, was based upon the unique and pivotal relationship between the United States and the Union of Soviet Socialist Republics.[10] No such relationship appears to exist between the United States and the People's Republic of Bulgaria, and the United States State Department has given no indication to the contrary.

In support of his application for release, defendant Kostadinov also relies on several national security cases where money bail was set. These cases are inapposite to the present case.

In *Truong Dinh Hung v. United States,* 439 U.S. 1326, 99 S.Ct. 16, 58 L.Ed.2d 33 (1978), the defendant was charged with attempting to transmit diplomatic cables and other classified papers concerning Southeast Asia to members of the North Vietnamese delegation at the Paris peace talks in 1976 and 1977. The District Judge set bail at $250,000 prior to trial, but revoked bail immediately after conviction because of the substantial evidence of guilt, the seriousness of the crimes, the length of the potential sentences, and the defendant's lack of American citizenship. *See* 439 U.S. at 1326–27, 99 S.Ct. at 16–17. After the defendant was sentenced to a maximum of 15 years, and after an appellate challenge to the use of evidence obtained from a 3-month warrantless wiretap in Truong's apartment was begun, Mr. Justice Brennan, substituting as a Circuit Judge in the absence of the Chief Judge, continued a $250,-000 bail. Justice Brennan noted that defendant Truong had been resident in the United States "continuously since 1965," that Truong had "extensive ties to the community," and that Truong had "maintained a close relationship with his sister, a permanent resident of the United States since

---

**8.** There is no evidence that a close personal relationship existed between the Ambassador and the defendant supporting a conclusion that the Ambassador can accurately judge the defendant's inclination to appear. *Compare Truong Dinh Hung, supra,* 439 U.S. at 1329, 99 S.Ct. at 18 where defendant's sister, who had a long and close personal relationship with the defendant, vouched for his inclination to appear in court and supported her avowal by pledging the entire equity in her home.

**9.** The Ambassador's assurance must be weighed against his relationship with Kostadinov. If defendant Kostadinov engaged in espionage, then the Ambassador either knew of defendant's criminal activities and condoned and supported them, or he was not aware of defendant's activities in which case his ability to control Kostadinov is in serious doubt.

**10.** The unique characteristics of our relationship with the Soviet Union were reflected in *United States v. Ivanov,* 384 F.2d 554 (3d Cir. 1967), *vacated and remanded sub nom. Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), in which the defendant was released on $100,000 bail even after conviction. After Ivanov was sentenced, the government moved to reduce Ivanov's sentence to time already served prior to trial because of the government's determination that further incarceration would adversely affect the national interest. The motion was granted.

1969," who had pledged the equity in her house to ensure his appearance. These factors by themselves wholly distinguish *Truong* from the present case.[11]

In *United States v. Igor Y. Melekh,* (N.D. Ill.1960), defendant Melekh was charged only with violations of 18 U.S.C. §§ 793(a), (b), and (c), in three ten year counts. He was not charged under the provisions of § 794 which carry a penalty of life imprisonment. His bail of $50,000 was further reduced on motion of the government to enable Melekh to leave the United States, and upon further motion of the government the indictment was dismissed.

In *United States v. Aleksandr Vasilyevich Tikhomirov,* (W.D.Wash.1970), the defendant was charged by complaint under 18 U.S.C. § 793(b), which again carries only a 10-year penalty. The case was dismissed before indictment on the motion of the government upon the ground that continued prosecution would be detrimental to the interests of the United States. Tikhomirov was expelled within six days following his release on a bail of $75,000.

In *United States v. Valeriy Ivanovich Markelov,* (E.D.N.Y.1972), the defendant who was a Soviet citizen employed by the United Nations, was indicted on two counts each carrying a 10-year penalty. His bail of $500,000 was reduced to $100,000, which he posted. The indictment was subsequently dismissed on the motion of the government in consideration of national security interests which otherwise would have been prejudiced.

In the present case, by contrast, the United States Department of State has declined to intervene in the matter of bail. The charges against Kostadinov carry a possible penalty of life imprisonment rather than a ten year maximum. Here the government intends to fully prosecute Kostadinov. *See* "Government's Memorandum in Support of Continued Remand of Defendant Kostadinov" at page 18.

---

11. In addition, Justice Brennan noted that numerous affidavits had been submitted from distinguished American scholars "attesting to [Truong's] character and to his reliability as a bail risk"; the American Friends Service Com-

## CONCLUSION

In sum, the unique nature of the charged offense and its severe penalties, the heavy weight of the evidence against the defendant in proof of that charge, and the defendant's lack of any meaningful ties to the United States together strongly indicate that, regardless of what reasonable conditions of release are imposed, the risk of flight is overwhelming. This is the rare case of extreme and unusual circumstances that justifies pretrial detention without bail. Accordingly, defendant Kostadinov's motion for release pending trial is denied and he is remanded without bail pending trial.

SO ORDERED.

mittee and the National Council of Churches also had attested to their belief in Truong's intent to appear by posting "large sums which are now in the registry of the court." 439 U.S. at 1329–30, 99 S.Ct. at 18.