**UNITED STATES of America, Appellee,**

v.

**Donald PAYDEN, Defendant-Appellant.**

**No. 1554, Docket 85–1216.**

United States Court of Appeals,
Second Circuit.

Argued June 28, 1985.

Decided July 17, 1985.

Robert Simels, New York City, for defendant-appellant.

Robert Garcia, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty.,

---

**7.** The decisions on which appellants rely relate to issues *not* raised by the pleadings or tried by the parties.

**488**

S.D.N.Y., John K. Carroll, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before KEARSE and CARDAMONE, Circuit Judges and WYATT, District Judge.*

CARDAMONE, Circuit Judge:

The question posed on this expedited appeal is whether appellant may properly be detained before trial under the Bail Reform Act of 1966. The district court, 609 F.Supp. 1273, revoked appellant's bail because of its finding that he attempted to contract for the murder of a key government witness and her daughter. We have recently held that the Bail Reform Act of 1984 provides statutory authority for detention before trial if a witness is threatened. *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985). We now conclude that the court had the inherent power under the 1966 Act as well to impose pretrial detention under the extraordinary circumstances of this case, though the road leading there diverges from the one recently travelled.

I

Donald Payden was arrested on August 2, 1984 and charged with conspiracy to violate the federal narcotics laws, 21 U.S.C. § 846 (1982), and distribution and possession with intent to distribute heroin, 21 U.S.C. § 841. Following indictment and arraignment, bail was fixed in the amount of $250,000 pursuant to the Bail Reform Act of 1966, 18 U.S.C. §§ 3141–3156 (1982), *amended by* Bail Reform Act of 1984, to be codified at 18 U.S.C. §§ 3141–3156 (effective Oct. 12, 1984). Payden was unable to make bail and was remanded to custody. On October 10, 1984 a superseding indictment that added a count to the existing indictment charged Payden with organizing a continuing criminal enterprise in violation of 21 U.S.C. § 848, for which he was arraigned on October 17, 1984. The government then moved on October 31 for a pretrial detention order pursuant to the Bail

Reform Act of 1984, 18 U.S.C. §§ 3141–3142. After holding a hearing on November 16, the district court issued a pretrial detention order on December 3rd. *See United States v. Payden*, 598 F.Supp. 1388 (S.D.N.Y.1984), *rev'd*, 759 F.2d 202 (2d Cir. 1985) (*Payden I*). Payden appealed the pretrial detention order.

On February 25, 1985 the government filed a second superseding indictment that, in addition to the charges contained in the first superseding indictment, included a detailed list of items sought to be forfeited, *i.e.*, cash, a 25% interest in a company as represented by shares of its stock, an automobile, and jewelry. Payden was arraigned on the second superseding indictment on February 26, 1985 at a time when *Payden I* was pending before this Court and the district court's December 3 pretrial detention order was still in effect. In March 1985 we reversed the lower court's pretrial detention order on the ground that the 1984 Act mandated its application to Payden at his first appearance before the district court on the first superseding indictment filed on October 17, 1984, rather than two weeks later on October 31 when the government first moved for detention. 759 F.2d at 204. We thereupon remanded the case to the district court "for reconsideration in accordance with the bail laws under which the court was effectively operating at the time of Payden's arraignment." *Id.* at 205.

On April 2, 1985 the government again moved for a pretrial detention order or in the alternative for an increase in bail from $250,000 to $1,000,000 on the basis of new information it had obtained. The government asserted that it had learned that Payden had approached James Turner, a fellow inmate at the Metropolitan Correctional Center (MCC), and asked him to murder a witness that Payden believed would appear and testify against him at his pending trial. On April 22 Payden moved for an order releasing him on the $250,000 bail that the

---

* Honorable Inzer B. Wyatt, United States District Judge for the Southern District of New York, sitting by designation.

magistrate had set on August 3, 1984. A hearing on both the government's and Payden's motions was held on May 9, 10, and 13 before the United States District Court for the Southern District of New York (Edelstein, J.). James Turner testified at length at that hearing. Payden did not introduce any evidence on his own behalf. On June 7, 1985 the district court entered an order detaining Payden before trial. It is from that order that Payden appeals. We affirm.

## II

Turner and Payden were both inmates at the MCC and talked with one another between August 1984 and January 1985. Turner has an extensive criminal record going back to 1965 when he killed a man with a butcher knife in a dispute over a woman. From 1978 through 1985 he committed a series of bank robberies, during one of which he shot an unarmed guard. At the time of Payden's hearing, Turner was awaiting sentencing on a bank robbery conviction. He testified that he had feigned insanity at trial and at a pretrial hearing, but had been found competent to stand trial. Additionally, psychiatric examinations had described Turner as, *inter alia,* a paranoid and antisocial personality. Turner testified that he told Payden about his criminal history. Payden then confided in Turner that he wanted to kill a government witness whom he identified as "Diane Turner." By then, according to Turner's testimony, he and Payden had become "real close" and Payden wanted to know if Diane Turner was related to him. When Turner said she was not, Payden then said that Diane Turner was ready to testify against him and he wanted her killed. Payden identified the witness as a 39-year-old black woman who had just been convicted for drug offenses along with Payden's brother. Payden asked Turner to kill this witness on a number of occasions and offered to "pay [Turner] good" for his services. Sometime after their initial conversations, Payden was visited by a girlfriend who brought him the Indianapolis, Indiana address of the target witness. Payden

knew that Indianapolis was James Turner's hometown. When Payden gave Turner the government witness's Indianapolis address, he told Turner that he also wanted the witness's daughter, who lives in New York City, killed.

Payden gave Turner an address and a telephone number so that he could make initial arrangements for the murders when he was released from the MCC. From August 1984 until his trial on the bank robbery charges in March 1985, Turner was convinced that he would be released and from the time Payden first approached Turner, both believed that Turner would not be in prison very long. Turner's optimism about his release was based on his belief that he had successfully demonstrated his mental incompetency to stand trial.

The information that Payden gave Turner (other than the name) plainly identified Claudine Jones as the person that Payden wanted killed. Payden described his target as a woman who was testifying against him, who came from Indianapolis and had a daughter, and who with Payden's "brother" was serving a 20-year sentence for narcotics violations. Jerry McGee, who calls himself Payden's half-brother, and Claudine Jones are both serving 20-year sentences for narcotics violations. Turner relayed all of the above information about Payden to the Superintendent of the MCC in January 1985, while Turner's bank robbery trial was pending.

## III

The Bail Reform Act of 1984 authorizes the district court to detain a defendant before trial if there is "a serious risk" that the defendant will "injure, or intimidate . . . a prospective witness." 18 U.S.C. § 3142(f)(2)(B). *See Leon,* at 81. Because of our remand in *Payden I* "for reconsideration in accordance with the bail laws under which the court was effectively operating at the time of Payden's arraignment," 759 F.2d at 205, the district court did not apply the Bail Reform Act of 1984, but applied the law as it existed prior to that Act's inception. That is, it looked to the Bail Reform Act of 1966 and the inherent powers of the court.

Although the right to bail before trial is a reflection of the presumption that the accused person is innocent until proven guilty, *see Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951), the right has never been absolute. The Bail Reform Act of 1966 did not explicitly provide authority for detention before trial. Nonetheless courts have recognized the inherent power of a trial court to remand a defendant without bail before trial when such defendant jeopardizes the court's processes by threatening government witnesses. Thus, for example, in *Carbo v. United States*, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962), *review denied*, 369 U.S. 868, 82 S.Ct. 1137, 8 L.Ed.2d 274 (1962), Justice Douglas, writing as a Circuit Justice, observed that a court's inherent power to remand a defendant during trial might extend to custody in advance of trial if necessary to prevent any attempt to interfere with government witnesses, but stated that the power should be exercised only in an "extreme or unusual case." 82 S.Ct. at 668. The reason for permitting detention prior to trial in an extraordinary case has been succinctly stated: "The extension of inherent powers to deny bail during trial to the pre-trial period recognizes that unless the witnesses are protected before trial they and their testimony will not be available at trial." *United States v. Graewe*, 689 F.2d 54, 57 (6th Cir.1982) (per curiam). *See also United States v. Wind*, 527 F.2d 672, 675 (6th Cir.1975); *United States v. Gilbert*, 425 F.2d 490, 490–92 (D.C.Cir.1969) (per curiam). Again, in *United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985), the court cited *Graewe* and *Gilbert* for the "well-established" proposition that "where the court finds that a defendant's release creates an unusual risk of obstruction of justice, the Constitution and relevant statutes permit detention." *Id.* at 206. In fact, this proposition of law is so accepted that Payden's counsel conceded at oral argument that the district court had the power to issue the order for pretrial detention, if it correctly found that Payden had threatened witnesses. The district court found that Payden had done more

than threaten a witness; it found that he had attempted to have a witness killed. The district court judge therefore had inherent power—under the law as it existed prior to the Bail Reform Act of 1984—to revoke Payden's bail if it found that his release would create an unusual risk of obstruction of justice.

Despite the language we used in *Gavino v. MacMahon*, 499 F.2d 1191, 1195 (2d Cir. 1974) (per curiam), to the effect that a judge's discretionary power to revoke bail "does not extend to revocation of bail before trial," *id.*, the case does not actually hold that to be the law. Under the circumstances there the passage is clearly dictum, and the language's broad reach is refuted in the opinion. The district court in *Gavino* revoked defendant's bail when it found that his counsel would be unavailable for trial on the scheduled date. The trial judge wanted Gavino taken into custody so that it could appoint another counsel to represent him. Remand for this reason certainly would not be justified under a trial court's inherent powers as we have described them. Moreover, in *Gavino* we stated in our discussion of the Bail Reform Act of 1966 that "the defendant will have the pretrial right to release on bail *except in extreme and unusual circumstances, e.g., where threats to a government witness would jeopardize the court's own processes*" *Id.* (emphasis supplied) (citing *Carbo*, 82 S.Ct. at 668). Thus, we too have recognized that, in situations like the present one, detention before trial is permitted.

■ There is no doubt that the district court had the power to detain Payden if it found that his release posed a serious threat to the court's processes. Payden's principal argument on this appeal is that the district court's findings of fact were erroneous because, in light of Turner's history of mental instability and deliberate prevarications, the court should not have credited Turner's testimony. Turner's testimony, if believed, was of course ample to support the district court's finding that the government had established by a preponderance of the evidence that Payden had attempted to arrange the murder of the

government's witness Claudine Jones and her daughter. We are unable to conclude that the district court's findings of fact are clearly erroneous, since the assessment of the credibility of witnesses is within the province of the trier who has heard the testimony and observed the witness's demeanor. *See Palermo v. Warden*, 545 F.2d 286, 293 (2d Cir.1976), *cert. dismissed*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221(1977); *Caputo v. Henderson*, 541 F.2d 979, 984–85 (2d Cir.1976). As a reviewing court, we will not disturb a determination to believe a witness unless his testimony is, in light of the record, inherently incredible. Here, the district court expressly considered Turner's history of mental instability, perjury during judicial proceedings, and motive to lie to receive a more lenient sentence for his bank robbery conviction, but found his testimony credible. We see no basis for disturbing this assessment of Turner's credibility, and hence no basis for concluding that the findings of fact are clearly erroneous.

■ Payden's behavior constitutes the "extreme or unusual" circumstances warranting his pretrial detention under the bail laws in effect at the time of Payden's first arraignment. Accordingly, the order appealed from is affirmed.