Debra Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, FAGG, and BOWMAN, Circuit Judges.

**UNITED STATES of America, Appellee,**

v.

**Bruce E. HOLLOWAY, Appellant.**

**No. 85–1986.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1985.

Decided Jan. 6, 1986.*

ARNOLD, Circuit Judge.

The sole question which we must decide in this appeal is whether, under the Bail Reform Act of 1984, 18 U.S.C. § 3142, the government may request bail at the defendant's first appearance before a judicial officer, then change its mind and request detention at a subsequent appearance before that same officer when the only evidence to come to light during the interim is that the defendant has a greater net worth than originally supposed. We hold the

* On October 11, 1985, after hearing argument by telephone, we entered an order reversing the District Court's detention order. The order stated that an opinion explaining it would follow. This is that opinion.

government's request untimely and therefore reverse the detention order entered after defendant's second appearance and direct that the original order fixing bond be reinstated.[1]

## I.

Bruce E. Holloway was arrested on 16 July 1985 in connection with an investigation of cocaine dealing in Poplar Bluff, Missouri.[2] At his first appearance before a magistrate on that day, the Court, at the request of the government, set his bond at $250,000. Two days later, after a search authorized by warrant revealed evidence that Holloway's net worth was about $700,-000, the government moved for pretrial detention. After an adversary hearing, the magistrate ordered him held without bond.

On 1 August 1985, Holloway moved in the United States District Court for the Eastern District of Missouri to set aside the detention order and set bond. After a hearing in which both sides submitted evidence going to the questions of whether Mr. Holloway was likely to flee the jurisdiction pending trial and whether he would present a danger to the community if he were released, the Court ordered him held, thus affirming the magistrate's detention order.

## II.

The 1984 amendments to the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, made significant changes in federal pre-trial release policy and practice. The previous Act had as its primary goal ensuring that defendants would appear for judicial proceedings. The basic tool for assuring appearance was money bail. As the legislative history[3] points out, judges were usually not allowed under the old Act to consider the possible danger to the community which would re-

sult from the release of particular defendants. Consequently, in some instances a dangerous felon would go free pending trial, while in other instances an accused person who presented little risk to public safety would be incarcerated pending trial simply because he was unable to raise the amount of money required for his bail. In drafting the 1984 Act, Congress sought to balance the important interest of the defendant in his freedom prior to conviction against the societal interests of having him appear for trial and in community safety. The statute favors release over detention for the majority of accused persons, and also specifically forbids the use of prohibitively high money bail as a pretext for detention.

The statute, § 3142(a), provides the judicial officer with a broad range of pre-trial release options. These options are to be considered sequentially, in order of severity, and the judicial officer is directed to select the option which is the least restrictive of the defendant but which will adequately assure his appearance for further judicial proceedings and will also protect the safety of the community. Section 3142(b) provides that the defendant shall be released on his own recognizance or on unsecured bond except when such release will not reasonably assure the safety of the community and the appearance of the defendant. When that is the case, the judicial officer may attach one or more of the conditions listed in § 3142(c), including secured bail. That section explicitly forbids imposition of any financial condition that results in detention. Pretrial detention is to be the exception rather than the rule, see Senate Report 6–7; *United States v. Orta*, 760 F.2d 887, 890–91 (8th Cir.1985) (en banc), and it is hedged around with procedural requirements designed to limit

---

**1.** Because our holding that the government's request for a detention order was untimely disposes of this case, it is unnecessary for us to discuss Holloway's additional arguments that the burden of proof was misplaced, and that the evidence did not justify a finding that he was likely to flee.

**2.** A grand-jury indictment was returned on 24 July 1985 charging Holloway with violations of 21 U.S.C. §§ 841(a)(1) and 846.

**3.** S.Rep. No. 225, 98th Cong., 1st Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, hereinafter cited as "Senate Report."

its use to those instances when it is clearly necessary. Under subsection (f), a detention hearing can be held either (1) upon the government's motion when the defendant is accused of certain designated serious felonies, or (2) upon the motion of the government or of the judicial officer when there is a serious risk that the defendant will flee or that he will obstruct justice or harm a witness or juror. In either event, subsection (f) provides that:

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on the motion of the person may not exceed five days, and a continuance on the motion of the attorney for the Government may not exceed three days.

The "first appearance rule" of § 3142(f), just quoted, governs this case.

### III.

Defendant asserts that since the government did not move for his detention at his first appearance before the magistrate on 16 July, it was foreclosed from doing so two days later, and that the magistrate's decision to grant that motion on the 18th of July was erroneous. The government, on the other hand, argues that a delay of two days is insignificant under the Act.

The Act plainly says that the detention hearing is to be held "immediately upon the person's first appearance before the judicial officer" unless a continuance is granted. The "first appearance" mentioned in the statute is obviously the "initial appearance before the magistrate" which is prescribed by Fed.R.Crim.P., Rule 5. That rule in turn indicates that detention or release is one of the matters to be determined at the initial appearance. The legislative history, *supra* note 3, confirms this view, as it explains the need for short continuances as necessary when the defendant is arrested shortly after commission of the crime. Senate Report 21–22. If some appearance other than the initial post-arrest

appearance were intended in the statute, then this explanation in the Senate Report would be incongruous, and there would be less of a need to provide for continuances as this statute has done. See *United States v. Al-Azzawy,* 768 F.2d 1141 (9th Cir.1985).

If only the words of the statute are to be looked to, obviously the defendant must prevail. Here, the detention hearing was not held "immediately upon the [defendant's] first appearance before the" magistrate. It was held at the second appearance, two days after the government, at the first appearance, had successfully argued for a $250,000 bond. The government points out that between the first and second appearances additional evidence with respect to the defendant came to light. If this evidence were relevant to the likelihood of flight, or to the question whether Holloway was likely to obstruct justice or threaten, injure, or intimidate a witness or juror, the government's argument would have force. Compare *United States v. Maull,* 773 F.2d 1479, 1483 (8th Cir.1985) (en banc), criticizing the literal interpretation of the statute adopted in *United States v. O'Shaughnessy,* 764 F.2d 1035, 1038 (5th Cir.1985), which held that pretrial detention is unavailable when "information establishing a defendant to be a danger to others comes into the Government's possession shortly after the initial appearance." *Ibid.* Here, however, the new evidence went only to defendant's estimated net worth. Counsel for the government candidly conceded at the oral argument that when the government learned that the defendant might have enough money to post the $250,000 bond which had previously been set at the government's own instance, it became concerned that defendant would in fact post that bond, be released, and then flee. It therefore decided to move for a detention order because it feared that the $250,000 bond previously set would be insufficient to keep defendant in custody.

We give the government high marks for frankness in thus revealing its approach to the case, but we cannot approve this strategy, because it is in clear conflict with the

command of Congress, § 3142(c), that money bond not be used to effect the detention of a defendant. If the new evidence convinced the government that a quarter of a million dollars would not be sufficiently significant to deter flight, it might have been justified in moving for an increase in the amount of the bond, but to move for a detention order in these circumstances was at war with the philosophy of § 3142(c). That defendant was worth more than originally supposed may show that $250,000 did not mean enough to him to deter flight; it does not show that there is no larger sum that defendant could have posted, but that would have been large enough reasonably to assure his appearance. The statute plainly says that bail is not to be set at a level that the defendant cannot make, so as to result in detention. If the judicial officer determines that some amount of money will assure the appearance of the defendant, then he must select an amount that is attainable. See *United States v. Orta*, 760 F.2d 887, 890 (8th Cir.1985) (en banc).

The government contends that the first-appearance rule of § 3142(f) requires only that a hearing be held promptly after a motion for detention is made, and not that the hearing must be held immediately upon the defendant's first appearance before the judicial officer. In support of this argument it quotes the following passage from our en banc opinion in *Maull, supra*, 773 F.2d at 1483:

> A fair reading of the statute is not that a detention hearing must be held "immediately" when a defendant first appears in court, else to be forever barred, but rather that once a motion for pretrial detention is made, a hearing must occur promptly thereafter.

(Footnote omitted.) Taken out of context, the language tends to support the government's position. Like all language in judicial opinions, however, this passage must be understood against the background and in the procedural context of the particular case that was before the Court.

*Maull* differs from the present situation in a number of important respects. In the first place, in *Maull* detention was ordered by the District Court on defendant's first appearance before it. It was not a case of a defendant's appearing twice before the same judicial officer and being detained by reason of a motion made by the government between the first and second appearances. The *Maull* opinion expressly distinguishes a situation involving "multiple appearances before the same judicial officer with motions for detention filed by the government after the first appearance." *Ibid. United States v. O'Shaughnessy, supra,* and *United States v. Payden,* 759 F.2d 202 (2d Cir.1985), were distinguished by the *Maull* court on this ground, among others. Here, we have exactly the situation distinguished in *Maull,* multiple appearances before the same judicial officer with a motion for detention filed by the government after the first appearance.

In addition, *Maull* arose in rather unusual procedural context, one expressly addressed by the legislative history. There, the magistrate had set a certain amount of money as defendant's bond. The defendant appealed this order to the District Court, contending that he was not able to make bond in this amount. As we observed in *Maull,* "[t]he legislative history of the Bail Reform Act particularly addresses the situation which developed in Maull's request for review." 773 F.2d at 1482. The Senate Report, at 16, expressly states that if the defendant cannot meet the bond previously set, and if the judicial officer concludes that this initial amount is reasonable and necessary, then it would appear that there is no available condition of release that will assure the defendant's appearance. "This is the very finding which, under 3142(e), is the basis for an order of detention, and therefore the judge may proceed with a detention hearing pursuant to § 3142(f)." *Ibid.*

In short, *Maull* was a case where the defendant himself, by contending that the money bond previously set by the magistrate was excessive, necessarily triggered the District Court's consideration, on its own motion, of the question of detention. This reading of *Maull* is confirmed by our own statement of the issue presented in that case, appearing as the first sentence of the opinion for the Court en banc:

The issue presented is whether under the Bail Reform Act of 1984, 18 U.S.C. § 3142, a district court, on review of a defendant's appeal for a reduction of a magistrate's bond order, may on its own motion call for a detention hearing and order a defendant detained pending trial. 773 F.2d at 1481 (footnote omitted). To this question we gave an affirmative answer.

In the present case, we have a defendant's second appearance before the same judicial officer, not his first appearance before the judicial officer who ordered detention. We have detention being ordered on motion of the government, not on motion of the judicial officer himself. And we have detention being considered not because defendant's own argument that money bond was excessive triggered such consideration, but rather because the government itself feared that money bond previously set at its own request was in fact within defendant's reach and would therefore not suffice to keep him in prison. Both *Maull* and the instant case seem rather unusual, but we think the differences between them are clear and dispositive. To sustain the government's contention here would go far towards reading out of the statute completely the requirement that a detention hearing be held upon a defendant's first appearance, and we do not believe that

*Maull* requires any such drastic rewriting of an Act of Congress.

The government also notes, correctly, that the Bail Reform Act was modeled after a similar provision in force in the District of Columbia. D.C.Code § 23–1322. See *Maull*, 773 F.2d at 1485 & n. 6, noting, with respect to another question arising under the Act, that the District of Columbia statute "served as a model for the drafters of the Bail Reform Act."

The D.C.Code has been held to allow a government motion for detention as long as five months after the defendant's initial arrest and appearance, even though the government had ample evidence at the time of arrest to move then for detention. *Blunt v. United States*, 322 A.2d 579, 583 (D.C.App.1974). However, the D.C.Code section on pretrial-detention hearings, set out in the margin,[4] contains no first-appearance rule at all. Considering that the drafters of the Bail Reform Act were aware of the content of this section of the D.C.Code and indeed borrowed a portion of it for the Act, the fact that they declined to incorporate the remainder of it, but instead drafted the first appearance rule as it appears in § 3142(f), indicates a rejection of the construction adopted in *Blunt*.

We do not doubt that in the exceptional instance when a magistrate has made a

---

**4.** Section 23–1322. Detention prior to trial.

(a) ...

(b) ...

(c) The following procedures shall apply to pretrial detention hearings held pursuant to this section:

(1) *Whenever the person is before a judicial officer,* the hearing may be initiated on oral motion of the United States attorney.

(2) *Whenever the person has been released pursuant to section 23–1341 and it subsequently appears that such person may be subject to pretrial detention,* the United States attorney may initiate a pretrial detention hearing be ex parte written motion. Upon such motion the judicial officer may issue a warrant for the arrest of the person and if such person is outside the District of Columbia, he shall be brought before a judicial officer in the district where he is arrested and shall then be transferred to the District of Columbia for proceedings in accordance with the section.

(3) *The pretrial detention hearing shall be held immediately upon the person being brought*

*before the judicial officer for such hearing* unless the person or the United States attorney moves for a continuance. A continuance granted on the motion of the person shall not exceed five calendar days, unless there are extenuating circumstances. A continuance on motion of the United States attorney shall be granted upon good cause shown and shall not exceed three calendar days. The person may be detained pending the hearing.

(4) ....

D.C.Code Ann. § 23–1322 (emphasis added). We note that this section allows for a detention hearing at any time, even after release of the defendant on bond, upon the *ex parte* motion of the government attorney. Subsection (c)(3) cautions the judicial officer to hold the hearing immediately upon the person's being brought before him *for that purpose,* but, consistently with the context of the section, does not limit the time of hearing to a defendant's first appearance. The difference between this section and the Bail Reform Act is obvious.

decision to release and subsequently evidence comes to light which could not reasonably have been brought in at the first appearance, and that evidence indicates a strong likelihood that the defendant is a flight risk or a danger to the community, the magistrate or the district court would have power to order detention under § 3142(e), regardless of the fact that the time for a § 3142(f) hearing had passed. This power was recognized under the previous Act, see *United States v. Payden,* 768 F.2d 487, 490 (2d Cir.1985), and it would not be consistent with the underlying purposes of the present Act to deny to the court the power to amend or revoke its decision on release at any time if there were substantial newly discovered reasons for believing that the release of the defendant would jeopardize the safety of the community or likely result in his fleeing the jurisdiction. We repeat that in this case no such new evidence came to the attention of the court at any time.

## IV.

Accordingly, we reverse the decision of the District Court and reinstate the original order setting bond for the appellant at $250,000.